TAMARISK COUNTRY CLUB, PETITIONER *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1652–83.     Filed April 24, 1985.

*Richard J. Sideman,* for the petitioner.
*Michael C. Cohen,* for the respondent.

OPINION

GERBER, *Judge:*[*] Respondent, in a November 4, 1982, statutory notice, determined a deficiency of $44,592 in petitioner Tamarisk Country Club's Federal income tax liability for its taxable year ended September 30, 1974. We must decide the extent to which the gain realized by petitioner, a tax exempt social club, on the sale of property used directly in the performance of its exempt function must be recognized pursuant to section 512(a)(3)(D).[1]

The parties have stipulated to the facts in this case. Their stipulation of facts and accompanying joint exhibits are incorporated by this reference.

Petitioner is an organization exempt from taxation under section 501(c)(7). Its principal place of business is located in Rancho Mirage, California, and its principal activity is the operation of a private golf club for its members. For its taxable year ended September 30, 1974, petitioner filed with the Internal Revenue Service Center in Philadelphia, Pennsylvania, a Return of Organization Exempt From Income Tax (Form 990) and an Exempt Organization Business Income Tax Return (Form 990-T).

On April 24, 1972, petitioner purchased a 55-acre tract of land adjacent to its existing facilities. The new property was to be used either for expansion of the club's golf course or for construction of other related recreational facilities. There was no intent to hold the 55-acre tract as an investment. The purchase price of the land was $643,218, including $1,654 for fees incident to the purchase. Petitioner deposited $100 cash, assumed existing trust deeds of $379,430 on the property, and paid the remainder of the purchase price in cash from the proceeds of an unsecured bank loan of $262,033.78. To raise funds to pay for the land, petitioner, pursuant to a resolution of its membership, assessed each member $1,250, payable in five annual installments of $250 each and refundable upon death or resignation from the club. This assessment resulted in the collection of $318,500 from petitioner's membership.

---

[*]By order of the Chief Judge, this case was reassigned from Judge C. Moxley Featherston to Judge Joel Gerber for disposition.

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the year at issue.

These collected funds were applied to reduce the amount owing on the deeds of trust that had been assumed at the time of purchase.

Membership in petitioner began to decline in mid-1973, and by November 1973 it became apparent that petitioner might be unable to finance the projects proposed for the acquired land. The membership considered the situation and voted in favor of selling the property. On March 26, 1974, petitioner sold the property for a total consideration of $850,000 in cash.

At the time of sale, petitioner's adjusted basis in the property was $695,819, including interest and taxes that petitioner had elected to capitalize under section 266. Petitioner incurred $5,541 in selling expenses and realized a gain of $148,640 on the sale. The sale proceeds were applied as follows:

| | |
|---|---|
| Refund of membership assessments | $318,500 |
| Full payment of note (including interest) from bank loan | 265,000 |
| Selling expenses | 5,541 |
| Retained by petitioner as of Mar. 26, 1974 | 260,959 |
| | 850,000 |

During the 4-year period beginning March 26, 1973 (1 year prior to the sale of the land), and ending March 26, 1977 (3 years subsequent to the sale of the land), petitioner purchased property used directly in the performance of its exempt function with a total cost of $305,511.[2]

On its Form 990 for the taxable year ended September 30, 1974, petitioner claimed that recognition of its realized gain on the land sale was deferred pursuant to section 1.512(a)–3(e), Proposed Regs.[3] Respondent in his statutory notice determined that the gain realized upon the sale constituted unrelated business taxable income in the amount of $148,640, taxable in petitioner's fiscal year ended September 30, 1974.

Petitioner's purchase and sale of land and subsequent purchase of other property raise the issue of the amount of gain, if any, petitioner must recognize on its sale of the 55-acre

---

[2]No new land was purchased. Expenditures were made for golf carts, land improvements, and other items. Sec. 512(a)(3)(D) does not require the new property to be similar in kind or use to the old.

[3]Sec. 1.512(a)–3(e), Proposed Regs., sets forth rules applicable to the nonrecognition of gain under sec. 512(a)(3)(D).

tract of land. In general, gain realized from the sale of property is recognized. Secs. 1001(c), 1002. Congress has permitted nonrecognition and deferral of gain in certain circumstances, such as like-kind exchanges (section 1031) and sale and acquisition of a principal residence (section 1034). This case involves the construction of section 512(a)(3)(D), which provided, in pertinent part, as follows:

SEC. 512. UNRELATED BUSINESS TAXABLE INCOME.
 (a) DEFINITION.—For purposes of this title—

\*      \*      \*      \*      \*      \*      \*

(3) SPECIAL RULES APPLICABLE TO ORGANIZATIONS DESCRIBED IN SECTION 501(c)(7) OR (9).—

\*      \*      \*      \*      \*      \*      \*

(D) NONRECOGNITION OF GAIN.—If property used directly in the performance of the exempt function of an organization described in section 501(c)(7) or (9) is sold by such organization, and within a period beginning 1 year before the date of such sale, and ending 3 years after such date, other property is purchased and used by such organization directly in the performance of its exempt function, gain (if any) from such sale shall be recognized only to the extent that such organization's sales price of the old property exceeds the organization's cost of purchasing the other property. For purposes of this subparagraph, \* \* \* rules similar to the rules provided by subsections (b), (c), (e), and (j) of section 1034 shall apply.

To our knowledge, this nonrecognition provision has not previously been construed.

Section 511(a) imposes a tax on the unrelated business taxable income of "section 501(c)(7) organizations."[4] "Unrelated business taxable income" is essentially gross income, excluding membership dues and fees, less allowable deductions directly connected with the production of gross income. Sec.

---

[4]SEC. 511. IMPOSITION OF TAX ON UNRELATED BUSINESS INCOME OF CHARITABLE, ETC., ORGANIZATIONS.
 (a) CHARITABLE, ETC., ORGANIZATIONS TAXABLE AT CORPORATION RATES.—
 (1) IMPOSITION OF TAX.—There is herby imposed for each taxable year on the unrelated business taxable income (as defined in section 512) of every organization described in paragraph (2) a normal tax and a surtax computed as provided in section 11. In making such computation for purposes of this section, the term "taxable income" as used in section 11 shall be read as "unrelated business taxable income".

512(a)(3)(A) and (B).[5] As noted, respondent determined that petitioner's realized gain of $148,640 on the land sale constituted "unrelated business taxable income," and determined petitioner's tax liability for the taxable year ended September 30, 1974, as $44,592. Petitioner maintains that no recognizable gain arose from the sale of the land and the subsequent purchase of other property.[6]

Petitioner contends that section 512(a)(3)(D) permits nonrecognition so long as the "price of the *organization's* equity in the old property does not exceed the cost of the *organization's* equity in the new property." According to petitioner, if all profits are reinvested in property that is also used for exempt purposes, no gain is to be recognized.[7] Petitioner asserts that under section 512(a)(3)(D), the "organization's sales price" of the land is $260,959. The $260,959 result is arrived at by subtracting from the $850,000 proceeds of the sale, selling expenses ($5,541), amounts spent to discharge the indebtedness on the unsecured loan ($265,000), and the refund of the membership assessment ($318,500). Since the cost of purchasing other property was $305,511, an amount higher than the

---

[5]SEC. 512. UNRELATED BUSINESS TAXABLE INCOME.
(a) DEFINITION.—For purposes of this title—

\* \* \* \* \* \* \*

(3) SPECIAL RULES APPLICABLE TO ORGANIZATIONS DESCRIBED IN SECTION 501(c)(7) OR (9).—
(A) GENERAL RULE.—In the case of an organization described in section 501(c)(7) or (9), the term "unrelated business taxable income" means the gross income (excluding any exempt function income), less the deductions allowed by this chapter which are directly connected with the production of the gross income (excluding exempt function income), both computed with the modifications provided in paragraphs (6), (10), (11), and (12) of subsection (b).
(B) EXEMPT FUNCTION INCOME.—For purposes of subparagraph (A), the term "exempt function income" means the gross income from dues, fees, charges, or similar amounts paid by members of the organization as consideration for providing such members or their dependents or guests goods, facilities, or services in furtherance of the purposes constituting the basis for the exemption of the organization to which such income is paid. \* \* \*

[6]Petitioner offered two exhibits to which respondent has objected on grounds of relevance. Each exhibit consists of a letter to petitioner from a certified public accountant. One letter addresses the tax consequences of the sale of petitioner's land and the other relates to petitioner's purchases of new property following the sale. To the extent that these letters provide background information to assist the Court in understanding petitioner's arguments, they are received in evidence.

[7]Petitioner's position is somewhat unclear. We are not certain whether petitioner is asserting that reinvestment of profits or the seller's equity meets the requirements for nonrecognition. Petitioner's gain on the land sale was $148,640. The amount retained from the sale proceeds, which petitioner regards as its equity, was a greater amount, $260,959.

In any event, we regard petitioner's computation of its equity in the 55-acre tract as incorrect. Equity has been defined as the value of a property above the total of the liens. *Crane v. Commissioner*, 331 U.S. 1, 7 (1947). In computing its equity, petitioner subtracted the refundable membership assessment charge. The record, however, does not indicate that the membership had a claim or lien against the land.

amount petitioner contends is the "organization's sales price," petitioner concludes that it had no recognizable gain.

Respondent, in contrast, asserts that petitioner "organization's sales price" under section 512(a)(3)(D) is $844,459, the $850,000 sale proceeds, less $5,541 in selling expenses. According to respondent, the organization's sales price ($844,459) exceeds the cost of the new property ($305,511) by more than the gain realized ($148,640) so that petitioner must recognize the full amount of its realized gain. We agree with respondent and hold that petitioner must recognize the $148,640 gain.

The starting point for interpreting a statute is the language of the statute, itself. E.g., *Rosewell v. LaSalle National Bank*, 450 U.S. 503, 512 (1981); *Consumer Product Safety Commission v. GTE Sylvania*, 447 U.S. 102, 108 (1980). Absent a clearly expressed legislative intention to the contrary, the language of a statute ordinarily must be regarded as conclusive. E.g., *United States v. Turkette*, 452 U.S. 576, 580 (1981); *Consumer Product Safety Commission v. GTE Sylvania, supra* at 108.

According to the express language of section 512(a)(3)(D), "rules similar to the rules provided by subsections (b), (c), (e), and (j) of section 1034 shall apply." Citing no authority, petitioner asserts that section 512(a)(3)(D) should be read without resort to section 1034 until temporary or final regulations are adopted under section 512(a)(3)(D) because "similar rules" will not be established until that time.[8] We disagree. We cannot ignore section 1034 in interpreting section 512(a)(3)(D). To do so would be to disregard the mandate of the statute. Courts, not executive agencies, are the final authorities on questions of statutory construction. E.g., *Volkswagenwerk Aktiengesellschaft v. Federal Maritime Commission*, 390 U.S. 261, 272 (1968). The absence of temporary or final regulations under one section of the Code should not preclude us from interpreting the provision by resort to another Code section to which it refers.

---

[8]Respondent, on brief, acknowledges that sec. 1.512(a)–3, Proposed Regs., has not been adopted and states that he does not rely on the proposed regulation to support his position. Proposed regulations are tantamount to a position taken by respondent on brief. *Scott v. Commissioner*, 84 T.C. 683 (1985); *F.W. Woolworth Co. v. Commissioner*, 54 T.C. 1233, 1265–1266 (1970). Because respondent, on brief, does not look to his proposed regulation, we need not consider it further and accord it no weight.

Section 1034 provides for nonrecognition of gain on the sale of a principal residence.[9] Section 1034 does not contain a definition of "organization's sales price" but does contain a definition of "adjusted sales price" as the amount realized on the sale, less expenses for work performed to assist in its sale. Sec. 1034(b)(1). The "amount realized" is the consideration received, less selling expenses. Sec. 1.1034–1(b)(4), Income Tax Regs.; *Allstate Savings & Loan Association v. Commissioner*, 68 T.C. 310, 318 (1977), affd. 600 F.2d 760 (9th Cir. 1979), cert. denied 445 U.S. 962 (1980). To apply section 1034(b) to the facts before us, we subtract petitioner's selling expenses of $5,541 from the $850,000 consideration it received to arrive at its "amount realized," $844,459. By analogy to the definition of "adjusted sales price" in section 1034(b), "organization's sales price" is the amount realized, reduced by the aggregate of the expenses for work performed on the old property to assist in its sale. No work was performed on petitioner's old property to assist in its sale, so petitioner's sales price and its amount realized are the same, $844,459, a sum $538,948 in excess of petitioner's cost of purchasing the other property. Petitioner's gain on the sale is its amount realized ($844,459), less its adjusted basis in the land ($695,819), or $148,640. Sec. 1001(a); sec. 1.1034–1(b)(5), Income Tax Regs. Because petitioner's sales price of the 55-acre tract, less its cost of purchasing the other property, exceeds its gain, the nonrecognition provisions of section 512(a)(3)(D) are not available to petitioner and it must recognize the full amount of its gain on the land sale, $148,640. See *Shaw v. Commissioner*, 69 T.C. 1034, 1036 (1978); *Boesel v. Commissioner*, 65 T.C. 378, 385 (1975) (in both cases, computation of gain recognized under section 1034).

Petitioner vigorously asserts that section 512(a)(3)(D) must be interpreted consistent with the legislative objective in enacting the provision, as set forth by the Senate Finance Committee in S. Rept. 91–552 (1969), 1969–3 C.B. 423, which

---

[9]SEC. 1034. SALE OR EXCHANGE OF RESIDENCE.

(a) NONRECOGNITION OF GAIN.—If property (in this section called "old residence") used by the taxpayer as his principal residence is sold by him after December 31, 1953, and, within a period beginning 18 months before the date of such sale and ending 18 months after such date, property (in this section called "new residence") is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price (as defined in subsection (b)) of the old residence exceeds the taxpayer's cost of purchasing the new residence.

accompanied the enacting legislation, H.R. 13270, the Tax Reform Act of 1969, 83 Stat. 487, Pub. L. 91–172. Petitioner contends that Congress did not intend that gain be recognized on the facts before us.

The Senate Finance Committee provided the following reasons for changing former law, under which certain income of social clubs was exempt from taxation:

Since the tax exemption for social clubs and other groups is designed to allow individuals to join together to provide recreational or social facilities or other benefits on a mutual basis, without tax consequences, the tax exemption operates properly only when the sources of income of the organization are limited to receipts from the membership. Under such circumstances, the individual is in substantially the same position as if he had spent his income on pleasure or recreation (or other benefits) without the intervening separate organization. However, where the organization receives income from sources outside the membership, such as income from investments * * *, upon which no tax is paid, the membership receives a benefit not contemplated by the exemption in that untaxed dollars can be used by the organization to provide pleasure or recreation (or other benefits) to its membership. For example, if a social club were to receive $10,000 of untaxed income from investment in securities, it could use that $10,000 to reduce the cost or increase the services it provides to its members. In such a case, the exemption is no longer simply allowing individuals to join together for recreation or pleasure without tax consequences. Rather, it is bestowing a substantial additional advantage to the members of the club by allowing tax-free dollars to be used for their personal recreational or pleasure purposes. The extension of the exemption to such investment income is, therefore, a distortion of its purpose. [S. Rept. 91–552, *supra*, 1969–3 C.B. at 469–470.]

The committee explained the exception to its tax on unrelated business taxable income codified in section 512(a)(3)(D), as follows:

In addition, the committee's bill provides that the tax on investment income is not to apply to the gain on the sale of assets used by the organizations in the performance of their exempt functions to the extent the proceeds are reinvested in assets used for such purposes within a period beginning 1 year before the date of sale and ending three years after that date. This provision is to be implemented by rules similar to those provided where a taxpayer sells or exchanges his residence (sec. 1034). The committee believes that it is appropriate not to apply the tax on investment income in this case because the organization is merely reinvesting the funds formerly used for the benefit of its members in other types of assets to be used for the same purpose. They are not being withdrawn for gain by the members of the organization. For example, where a social club sells its clubhouse and uses

the entire proceeds to build or purchase a larger clubhouse, the gain on the sale will not be taxed if the proceeds are reinvested in the new clubhouse within three years. [S. Rept. 91–552, supra, 1969–3 C.B. at 470–471.]

Nothing in the committee report pertinent to section 512(a)(3)(D) supports petitioner's argument that it is entitled to nonrecognition of gain to the extent that its "equity" (or "profit") was reinvested in other qualifying property; to the contrary, the cited excerpt refers to reinvestment of the *proceeds* from the sale of property. If Congress intended, as petitioner maintains, that the realized gain on the sale by a section 501(c)(7) organization of property used directly in the performance of its exempt function not be recognized where the equity in the sold property or the profits on the sale are reinvested, it could have said so. See, e.g., *Malat v. Riddell*, 383 U.S. 569, 571 (1966). By discharging the indebtedness on its loan and by currently refunding the assessment, which its membership previously had agreed was refundable only upon death or resignation from the club, petitioner did not "merely reinvest" its funds from the land sale in other types of assets. In the language of the committee report, funds were "withdrawn for gain by the members of the organization," who benefited through decrease in petitioner's debt and return of the assessment. Petitioner's gain therefore constitutes unrelated business taxable income.

*Decision will be entered for the respondent.*