T.C. Memo. 1995-567


UNITED STATES TAX COURT


DEER PARK COUNTRY CLUB, Petitioner v. COMMISSIONER
OF INTERNAL REVENUE, Respondent


Docket No. 26210-93.            Filed November 28, 1995.


John S. Elias, for petitioner.

William I. Miller, for respondent.


MEMORANDUM OPINION


HAMBLEN, Chief Judge: Deer Park Country Club (petitioner)
is a nonprofit Illinois corporation qualifying as a social club
that is exempt from taxation under section 501(c)(7).[1]
Respondent determined a deficiency of $33,782 in petitioner's
Federal income tax liability for its taxable year ended October

_____

[1] Unless otherwise indicated, section references are to the
Internal Revenue Code as in effect for the year in issue. Rule
references are to the Tax Court Rules of Practice and Procedure.

31, 1987.[2]  The sole issue for decision is whether the gain that petitioner realized on the sale of land during the taxable year in issue constitutes unrelated business income subject to Federal income tax under section 512(a)(3)(A) or income that qualifies for nonrecognition treatment under section 512(a)(3)(D).

Background

This case was submitted fully stipulated pursuant to Rule 122.  The stipulation of facts and attached exhibits are incorporated herein by this reference.  At the time the petition was filed, petitioner maintained its principal place of business in Oglesby, Illinois.

Petitioner operates a country club providing recreational and social activities, including, but not limited to, golf, swimming, and tennis.  In 1976, petitioner purchased two tracts of land consisting of 48.1 and 40.8, acres respectively. Petitioner used the 48.1-acre tract as a 9-hole golf course and the 40.8-acre tract as a fishing property.  Petitioner continued to use the fishing property in the performance of its exempt function from 1976 to 1981.

---

[2]We note that although the first page of the notice of deficiency issued to petitioner identifies the tax period as the taxable year ended Oct. 1, 1987, the petition filed herein includes an allegation that the tax period in dispute concerns petitioner's tax year ended Oct. 31, 1987.  Respondent admits this allegation in her answer.

In 1981, petitioner transferred the 40.8-acre fishing property, plus an additional sum of $34,900, to the State of Illinois in exchange for 63.8 acres of farmland. Petitioner accepted the 63.8-acre tract subject to development restrictions imposed by the State of Illinois that remained in effect for 5 years from the date of the transfer. As a consequence of these development restrictions, petitioner rented out the 63.8-acre tract as farmland from 1981 to 1986.

During the 5-year period that the property was rented out as farmland, petitioner engaged a layout designer to develop plans for constructing an additional 9-hole golf course, a swimming pool, and tennis courts on the 63.8-acre tract. The layout designer produced, and petitioner's board of directors considered, various plans that would utilize the entire 63.8-acre tract for recreational facilities. However, after consulting with the banks that would provide financing for the planned expansion, petitioner was forced to adopt a plan under which a portion of the 63.8-acre tract would be devoted to a housing development as opposed to recreational facilities. The plan that petitioner finally settled on provided for 59 acres to be devoted to new recreational facilities with the remaining 4.8 acres to be subdivided as homesites for sale.

Construction of the new recreational facilities on the 59-acre tract was completed prior to the close of petitioner's

taxable year ended October 31, 1986. The remaining 4.8 acres were subdivided into 14 homesites. During petitioner's taxable year ended October 31, 1987, 11 of the 14 homesites were sold to petitioner's members for a total of $149,000. Petitioner's tax basis and development costs for the 11 homesites sold totaled $5,742 and $21,190, respectively, leaving petitioner with a gain of $122,068. Petitioner used the proceeds from the sale of the 11 homesites to pay for the construction of the new recreational facilities during the period beginning 1 year before and ending 3 years after the sale of the 11 homesites.[3]

Although petitioner originally intended that the entire 63.8-acre tract would be used for the development of new recreational facilities (following the expiration of the 5-year restriction period), petitioner never used any part of the 4.8-acre tract for recreational activities. On the other hand, the new recreational facilities constructed on the 59-acre tract have been used by petitioner directly in the performance of its exempt function.

Although petitioner filed a Form 990 (Return of Organization Exempt from Income Tax) for its taxable year ended October 31, 1987, petitioner did not file a Form 990-T (Exempt Organization

---

[3]At the time this case was submitted, the three remaining homesites remained unsold.

Business Income Tax Return) reporting the gain realized on the sale of the 11 homesites in question.

Discussion

Respondent determined that the gain that petitioner realized on the sale of the 11 homesites during the taxable year ended October 31, 1987, constitutes unrelated business income subject to Federal income tax under section 512(a)(3)(A). Petitioner counters that the gain in question qualifies for nonrecognition treatment under section 512(a)(3)(D).

It is well established that the Commissioner's deficiency determination generally carries with it a presumption of correctness and that the taxpayer bears the burden of proving that the determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Moreover, it has often been said:

> Exemptions as well as deductions are matters of legislative grace, and a taxpayer seeking either must show that he comes squarely within the terms of the law conferring the benefit sought * * *.

Nelson v. Commissioner, 30 T.C. 1151, 1154 (1958); see New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

The parties agree that petitioner is an organization described in section 501(c)(7) that is exempt from income taxation under section 501(a).[4] Notwithstanding its exempt

---

[4]Sec. 501(c)(7) provides:

(continued...)

status, petitioner may nevertheless be subject to tax with respect to business income that is not related to its exempt function. Sec. 501(b). In particular, section 511(a)(2)(A) provides that an organization described in section 501(c) that is exempt from taxation under section 501(a) may be subject to the imposition of a tax computed as provided in section 11 for each taxable year in which such organization earns unrelated business taxable income as defined in section 512.

Section 512(a)(3) sets forth special rules regarding the application of the unrelated business income tax to certain organizations described in section 501(c). Section 512(a)(3) provides in pertinent part:

> (3) Special Rules Applicable To Organizations Described In Paragraph (7), (9), (17), or (20) of Section 501(c).--
>
> (A) General Rule.--In the case of an organization described in paragraph (7) * * * of section 501(c), the term "unrelated business taxable income" means the gross income (excluding any exempt function income), less the deductions allowed by this chapter which are directly connected with the production of the gross income (excluding exempt function income), both computed with the modifications

---

[4](...continued)
(c) List of Exempt Organizations.--The following organizations are referred to in subsection (a):

* * * * * * *

(7) Clubs organized for pleasure, recreation, and other nonprofitable purposes, substantially all of the activities of which are for such purposes and no part of the net earnings of which inures to the benefit of any private shareholder.

provided in paragraphs (6), (10), (11), and (12) of subsection (b). * * *

(B) Exempt Function Income.--For purposes of subparagraph (A), the term "exempt function income" means the gross income from dues, fees, charges, or similar amounts paid by members of the organization as consideration for providing such members or their dependents or guests goods, facilities, or services in furtherance of the purposes constituting the basis for the exemption of the organization to which such income is paid. * * *

* * * * * * *

(D) Nonrecognition of Gain.--If property used directly in the performance of the exempt function of an organization described in paragraph (7) * * * of section 501(c) is sold by such organization, and within a period beginning 1 year before the date of such sale, and ending 3 years after such date, other property is purchased and used by such organization directly in the performance of its exempt function, gain (if any) from such sale shall be recognized only to the extent that such organization's sales price of the old property exceeds the organization's cost of purchasing the other property. * * *

For purposes of the present case, section 512(a)(3) can be summarized as providing that an organization described in section 501(c)(7) generally is subject to unrelated business income tax with respect to its gross income except: (1) Exempt function income; and (2) gains that, while realized, need not be recognized by virtue of section 512(a)(3)(D). The dispute in the instant case centers on section 512(a)(3)(D).

Respondent determined that petitioner is subject to unrelated business income tax in respect of the gain realized on the sale of the 11 homesites. In particular, respondent

maintains that the gain in question does not qualify for nonrecognition treatment under section 512(a)(3)(D) because the 4.8-acre tract on which the 11 homesites are situated was never "used directly" in the performance of petitioner's exempt function.

Petitioner asserts that the gain realized on the sale of the 11 homesites qualifies for nonrecognition treatment under section 512(a)(3)(D) on the theory that its various acts, including the engagement of a layout designer to develop a plan to construct recreational facilities over the entire 63.8-acre tract, demonstrate that the property was used directly in the performance of its exempt function. In this regard, petitioner contends:

> Petitioner used the 63.8 acres during the five-year restriction period in the only way it realistically could, which was to rent it out as farmland and to begin the process of developing the New Facilities on the 63.8 acres by engaging a layout designer to develop plans. Petitioner used the 63.8 acres during the five-year restriction period in performance of Petitioner's exempt function by beginning the development of better recreational facilities. It is difficult to comprehend how the development would not be in performance of Petitioner's exempt function.

In support of the foregoing, petitioner asserts that neither the plain language of section 512(a)(3)(D) nor the legislative history of the provision requires that property "be in actual (as distinct from planned) recreational use" in order to qualify for nonrecognition treatment.

We begin our analysis with the well established rule of statutory construction that statutes are to be read so as to give effect to their plain and ordinary meaning unless to do so would produce absurd or futile results.  United States v. American Trucking Associations, 310 U.S. 534, 543-544 (1940); see Tamarisk Country Club v. Commissioner, 84 T.C. 756, 761 (1985).  Moreover, where a statute is clear on its face, we require unequivocal evidence of legislative purpose before construing the statute so as to override the plain meaning of the words used therein. Halpern v. Commissioner, 96 T.C. 895, 899 (1991); Huntsberry v. Commissioner, 83 T.C. 742, 747-748 (1984).

Although there is a dearth of case law construing section 512(a)(3)(D), we nonetheless find one of our prior cases, Atlanta Athletic Club v. Commissioner, T.C. Memo. 1991-83, revd. 980 F.2d 1409 (11th Cir. 1993), to be instructive.  In Atlanta Athletic Club v. Commissioner, supra, the taxpayer (an organization described in section 501(c)(7) and exempt from income taxation under section 501(a)) operated a country club including two 18-hole golf courses, a clubhouse, a swimming pool, tennis courts, and other recreational facilities for the benefit of its members and their guests.  During its taxable year ended March 31, 1985, the taxpayer realized gain of approximately $2.3 million on the sale of 108 acres of land.  The taxpayer subsequently reinvested the $2.3 million in additional recreational facilities within 3

years of the date of the sale. Upon review of the matter, the Commissioner determined that the taxpayer was liable for unrelated business income tax in respect of the gain realized on the sale of its land because the land in question was not used directly in the performance of the taxpayer's exempt function as required for nonrecognition treatment under section 512(a)(3)(D).

In proceedings before this Court, the parties presented conflicting testimony and other evidence regarding both the taxpayer's intentions with respect to the use of the land in question and whether activities in furtherance of the taxpayer's exempt function were actually conducted on the property. In rendering our decision, we first rejected the parties' evidence respecting the taxpayer's intentions with respect to the use of the land on the ground that the applicability of section 512(a)(3)(D) does not turn on a taxpayer's intent. Further, based upon our review of the remaining testimony and evidence, we found that the land in question was not used directly in the performance of the taxpayer's exempt function. Consequently, we sustained the Commissioner's determination that the taxpayer was liable for unrelated business income tax. Atlanta Athletic Club v. Commissioner, T.C. Memo. 1991-83.

The taxpayer appealed our decision to the U.S. Court of Appeals for the Eleventh Circuit. As a preliminary matter, the Court of Appeals agreed with this Court's initial determination

that a taxpayer's intention with respect to the use of property is not relevant in determining the applicability of section 512(a)(3)(D).  In this regard, the Court of Appeals reasoned as follows:

> The statute speaks in terms of use rather than intent.  Therefore, the Tax Court correctly observed that the Club's various plans for the land were irrelevant.  Atlantic Athletic Club, 61 T.C.M. (CCH) at 2019.  The analysis must concentrate on the ways in which the Westside Property was or was not "used directly."  This process entails factual findings as to the activities that occurred on tracts A and B of the Westside Property, and legal conclusions as to whether those activities constituted sufficient recreational uses by the Club.  [Atlanta Athletic Club v. Commissioner, 980 F.2d at 1412.]

The Court of Appeals nevertheless reversed our decision after concluding that the testimony and evidence demonstrated that the taxpayer had in fact directly used the property in question in the performance of its exempt function.  In particular, the Court of Appeals focused on evidence that it concluded tended to show that the taxpayer conducted various activities on the property in question, including kite flying contests, foot races, and picnics.  Id. at 1412-1413.

The plain language of section 512(a)(3)(D) limits nonrecognition treatment to gains realized on the sale of property used directly in the performance of the organization's exempt function.  Consistent with Atlanta Athletic Club v. Commissioner, supra, we conclude that the plain and ordinary meaning of the phrase "used directly in the performance of the

exempt function of an organization" as set forth in section 512(a)(3)(D) connotes an exempt organization's use of assets or property that is both actual and direct in relation to the performance of its exempt function.  Given petitioner's concession that no part of the 4.8-acre tract on which the 11 homesites are situated was ever physically used by petitioner for recreational activities, it follows that the gain realized on the sale of the 11 homesites does not qualify for nonrecognition under section 512(a)(3)(D), but rather is subject to the unrelated business income tax.

Petitioner argues that Atlanta Athletic Club v. Commissioner, supra, is factually distinguishable from the instant case.  Specifically, petitioner asserts that unlike the instant case, there is no indication that the taxpayer in Atlanta Athletic Club v. Commissioner, supra, attempted to obtain a development plan for the property in question or that the property was subject to any sort of use restriction as is the case here.  Simply stated, we are not persuaded that the Tax Court or the Court of Appeals would have altered its interpretation of section 512(a)(3)(D) in the face of such evidence.

We likewise are not convinced that the legislative history underlying section 512(a)(3)(D) supports petitioner's position. Petitioner relies on S. Rept. 91-552 (1969), 1969-3 C.B. 423, for

the proposition that it would be contrary to congressional intent to subject the gains that it realized on the sale of the 11 homesites to unrelated business income tax.  S. Rept. 91-552, at 72-73 (1969), 1969-3 C.B. 423, 470-471, states in pertinent part:

> In addition, the committee's bill provides that the tax on investment income is not to apply to the gain on the sale of assets used by the organizations in the performance of their exempt functions to the extent the proceeds are reinvested in assets used for such purposes within a period beginning 1 year before the date of sale and ending three years after that date. This provision is to be implemented by rules similar to those provided where a taxpayer sells or exchanges his residence (sec. 1034).  The committee believes that it is appropriate not to apply the tax on investment income in this case because the organization is merely reinvesting the funds formerly used for the benefit of its members in other types of assets to be used for the same purpose.  They are not being withdrawn for gain by the members of the organization.  For example, where a social club sells its clubhouse and uses the entire proceeds to build or purchase a larger clubhouse, the gain on the sale will not be taxed if the proceeds are reinvested in the new clubhouse within three years.

Relying on this excerpt, petitioner argues that it would be inappropriate to subject the gains in question to unrelated business income tax where the gains were immediately reinvested in new recreational facilities.

As previously noted, where a statutory provision is clear on its face, we require unequivocal evidence of legislative purpose before construing the statute so as to override the plain meaning of the words used therein.  Halpern v. Commissioner, 96 T.C. 895, 899 (1991).  Although petitioner immediately reinvested its gains in new recreational facilities used in the performance of its

exempt function, the fact remains that Congress enacted a nonrecognition provision that is limited to a narrowly defined set of circumstances.  The benefits of section 512(a)(3)(D) are limited to gains realized on the sale of property that is used directly in the performance of the organization's exempt function.  Petitioner has failed to demonstrate that the gain that it realized on the sale of the 11 homesites fits within the terms of section 512(a)(3)(D).  Moreover, we are not satisfied that the legislative history relied upon by petitioner rises to the level of unequivocal evidence of legislative purpose sufficient to ignore the literal terms of the controlling statute.  Accordingly, we agree with respondent that petitioner was obligated to recognize and report the gain on its 1987 tax return.

We have considered petitioner's remaining arguments and find them unpersuasive.  To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent.</u>