118 T.C. No. 37

UNITED STATES TAX COURT

WARBELOW'S AIR VENTURES, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10351-00.                    Filed June 27, 2002.

        P leased land from the State of Alaska to operate
an airport.  The leased land is surrounded by lands
owned by a Native corporation and a federally
recognized Native entity.  P claimed the Indian
employment credit (IEC) on its corporate tax return
with respect to wages paid to employees who perform
substantially all of their services for P at the
airport.  R disallowed the IEC.

        <u>Held</u>:  The term "within an Indian reservation" in
I.R.C. sec. 45A(c)(1)(B) means located "on" an Indian
reservation.

        <u>Held</u>, <u>further</u>, P does not qualify for the IEC
because the airport is not located "within an Indian
reservation" within the meaning of I.R.C. sec. 45A.

Michael J. Walleri, for petitioner.[1]

Stephen P. Baker, for respondent.

OPINION

VASQUEZ, Judge:  Respondent determined the following deficiencies in petitioner's Federal income taxes:

| TYE Apr. 30 | Deficiency |
|---|---|
| 1996 | $12,482 |
| 1997 | 8,369 |
| 1998 | 355 |

The issue for decision is whether petitioner qualified for the Indian employment credit (IEC) pursuant to section 45A for its fiscal years ended April 30, 1996 (TY 1996), April 30, 1997 (TY 1997), and April 30, 1998 (TY 1998).[2]

Background

The parties submitted this case fully stipulated pursuant to Rule 122.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.  At the time the petition was filed, petitioner had its mailing address and principal office in Fairbanks, Alaska.

The city of Galena (Galena) is located approximately 270 miles west of Fairbanks on the north bank of the Yukon River.

---

[1]  Mr. Walleri began representing petitioner on Oct. 12, 2001.

[2]  All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Galena was traditionally inhabited by the Athabascan Indians. Galena Village[3] (Galena Village) refers to an undefined tribal territory within which Galena is located and also refers to a federally recognized Native entity within Alaska that has the same status as tribes in the contiguous 48 States.

The Alaska Native Claims Settlement Act (ANCSA), Pub. L. 92-203, 85 Stat. 688 (1971), current version at 43 U.S.C. secs. 1601-1629e (1994), created 12 Native regional corporations. Native residents of Galena are shareholders in the Doyon Native Regional Corporation (Doyon). Under ANCSA, the area on which Galena is located was made available for land selections by Doyon.

Native residents in Galena are also shareholders of the Gana-A' Yoo Native Village Corporation (Gana-A' Yoo), which was also created under State law in accordance with ANCSA.[4]

Petitioner operates an air charter service, which maintains a ground facility in Galena (Galena airport). The facility comprises a hangar and an office building. The Galena airport serves the villages in the Middle Yukon and Koyukuk River areas.

The Galena airport is located on land that petitioner leases from the State of Alaska, Department of Transportation and Public

---

[3]  Galena Village is also known as Louden Village.

[4]  Gana-A' Yoo is the successor to the village corporation of Notaaghleedin, Ltd.

Facilities. During the taxable years at issue, the State of Alaska and the Galena Air Station, a U.S. Air Force installation, owned and administered the land on which the Galena airport is located.[5] On this land, substantially all of petitioner's services are performed by Alaska Native employees. The Galena airport's land is bordered on the south by the Galena Village Townsite.[6] Gana-A' Yoo, pursuant to ANCSA, owns the lands that border the Galena airport on the north, east, and west.

On its amended corporate tax returns for TY 1996, TY 1997, and TY 1998, petitioner claimed the IEC. In the notice of deficiency, respondent disallowed the IEC because petitioner had not demonstrated that it met the requirements to claim the credit and allowed an additional deduction for wages or salary expense because of the disallowed credit.[7]

Discussion

Section 38 allows a taxpayer to claim against his tax a general business credit, which includes the amount of the current year business credit. Sec. 38(a)(2). The amount of the current

_____

[5] The U.S. Air Force transferred this land to the State of Alaska in 1966, subject to certain reservations respecting continuing use as a military base.

[6] A small portion of the southern border adjoins the Yukon River and a Federal air navigation site.

[7] In its petition, petitioner also claimed an overpayment of $6,078 for TY 1997.

year business credit includes the IEC determined under section

45A(a).  Sec. 38(b)(10).  Section 45A(a) provides:

> SEC. 45A(a).  Amount of Credit.--For purposes of
> section 38, the amount of the Indian employment credit
> determined under this section with respect to any
> employer for any taxable year is an amount equal to 20
> percent of the excess (if any) of--
>
>> (1)  the sum of--
>>
>>> (A)  the <u>qualified wages</u> paid or
>>> incurred during such taxable year, plus
>>>
>>> (B)  qualified employee health insurance
>>> costs paid or incurred during such taxable
>>> year, over
>>
>> (2) the sum of the qualified wages and
>> qualified employee health insurance costs
>> (determined as if this section were in effect)
>> which were paid or incurred by the employer (or
>> any predecessor) during calendar year 1993.
>> [Emphasis added.]

"Qualified wages" are defined as "any wages paid or incurred by

an employer for services performed by an employee while such

employee is a <u>qualified employee</u>."  Sec. 45A(b) (emphasis added).

A "qualified employee" is defined in section 45A(c)(1) as:

> (1)  In general.--Except as otherwise provided in
> this subsection, the term "qualified employee" means,
> with respect to any period, any employee of an employer
> if--
>
>> (A)  the employee is an enrolled
>> member of an Indian tribe or the spouse
>> of an enrolled member of an Indian
>> tribe,
>>
>> (B)  substantially all of the
>> services performed during such period by

such employee for such employer are
performed <u>within an Indian
reservation</u>, and

   (C)  the principal place of abode
of such employee while performing such
services is on or near the reservation
in which the services are performed.
[Emphasis added.]

The parties dispute the meaning of the phrase "within an Indian reservation" contained in section 45A(c)(1)(B).[8]

## I.   "Within" an Indian Reservation

Petitioner argues that section 45A does not require a qualified employee to work "on" an Indian reservation but "within" an Indian reservation.  Petitioner contends that the Galena airport is within the exterior boundaries of a reservation and is therefore "within" an Indian reservation as defined by section 45A because the Galena airport is totally surrounded by land that qualifies as an Indian reservation.

Respondent argues that Congress intended the phrase "within an Indian reservation" in section 45A to refer to the interior of the Indian reservation itself, not to non-Indian land adjacent to an Indian reservation.  Respondent contends that Congress provided the IEC to encourage private businesses to locate on Indian reservations in order to employ Native Americans who live

_____

   [8]  Sec. 7491 is effective for court proceedings arising in connection with examinations commencing after July 22, 1998. Petitioner does not contend that sec. 7491 is applicable to its case.  Further, we do not find that the resolution of this case depends on which party has the burden of proof.

there; therefore, respondent argues that the Galena airport must be physically located on an Indian reservation "per se" in order to qualify for the IEC.

We begin our analysis with the well-established rule that statutory construction begins with the language of the relevant statute. Consumer Prod. Safety Commn. v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980). Statutes are to be read so as to give effect to their plain and ordinary meaning unless to do so would produce absurd or futile results. United States v. Am. Trucking Associations, Inc., 310 U.S. 534, 543 (1940); see Tamarisk Country Club v. Commissioner, 84 T.C. 756, 761 (1985). We may use legislative history to clarify an ambiguous statute. Burlington N. R.R. v. Okla. Tax Commn., 481 U.S. 454, 461 (1987); City of New York v. Commissioner, 103 T.C. 481, 489 (1994), affd. 70 F.3d 142 (D.C. Cir. 1995). From the face of the statute, it is not clear what is meant by "within". We therefore examine the legislative history to clarify the language.

The House conference report accompanying the enactment of the section providing for the IEC referred to the IEC and to a related provision as "Tax incentives for businesses on Indian reservations." H. Conf. Rept. 103-213, at 718 (1993) (emphasis added). Further, the conference report described the Senate amendment as follows: "Under the Senate amendment, businesses located on Indian reservations generally are allowed a credit

against income tax liability for certain investments ('the Indian reservation credit') and a credit against income tax liability for certain wages and health insurance costs ('the Indian employment credit')." Id. (fn. ref. omitted; emphasis added). Further, the conference agreement set forth in the conference report stated: "As under the Senate amendment, a tribal member or spouse is a qualified employee only if he or she works on a reservation (and lives on or near that reservation) and is paid wages that do not exceed $30,000 annually." Id. at 723 (fn. ref. omitted; emphasis added). Thus, we conclude that the phrase "within an Indian reservation" in section 45A(c)(1)(B) means located on an Indian reservation.

## II. Defining "Indian Reservation"

Petitioner further argues that the land on which the Galena airport is located falls within the definition of an Indian reservation and therefore qualifies for the IEC pursuant to section 45A because the definition of Indian reservation is broader in this section than its conventional definition. Petitioner contends that section 45A, by incorporating the definitions from the Indian Financing Act of 1974 (IFA), Pub. L. 93-262, 88 Stat. 77, current version at 25 U.S.C. secs. 1451-1544 (2000), and the Indian Child Welfare Act of 1978 (ICWA), Pub. L. 95-608, 92 Stat. 3069, current version at 25 U.S.C. secs. 1901-1963 (2000), includes ANCSA lands.

Respondent argues that the Galena airport is not located within an Indian reservation as defined by the IFA, the ICWA, or by 18 U.S.C. sec. 1151 (2000). Additionally, respondent argues that Congress specifically carved out land on which airports were located from the Federal public lands that were made available for Native selection under ANCSA and, therefore, deliberately excluded these lands from Native ownership.

Section 45A defines "Indian reservation" as a reservation as defined in section 3(d) of the IFA, 25 U.S.C. sec. 1452(d), or section 4(10) of the ICWA, 25 U.S.C. sec. 1903(10). Secs. 45A(c)(7), 168(j)(6).

Further, Congress passed ANCSA to provide a grant of land and money to Native Alaskans in exchange for the extinguishment of their land claims within Alaska. See Doyon, Ltd. v. United States, 214 F.3d 1309, 1311 (Fed. Cir. 2000) (citing ANCSA). Pursuant to ANCSA, regional and village Alaska Native corporations were organized under State law, including Doyon and Gana-A' Yoo, to assist Native Alaskans in managing the 44 million acres of land and the $962.5 million transferred to them. 43 U.S.C. sec. 1607(a); Doyon, Ltd. v. United States, supra at 1311. Essentially, ANCSA ended Federal supervision over Indian affairs and revoked the Indian reservation system in Alaska.[9] 43 U.S.C.

_____

[9] Only one Indian reservation, the Annette Island Reserve, remains in Alaska after the enactment of ANCSA. 43 U.S.C. sec.
(continued...)

sec. 1618(a); see <u>Alaska v. Native Vill.</u>, 522 U.S. 520, 523 (1998).  The ANCSA corporations received title to the land in fee simple without any Federal restrictions applied to subsequent land transfers.  See <u>Alaska v. Native Vill.</u>, <u>supra</u> at 524.

Certain land was required to be conveyed to the Federal Government under ANCSA.  See 43 U.S.C. sec. 1613.  Specifically, title to the land on which an airport is located, including additional land that was necessary to provide Government-related services and to ensure safe airplane approaches, was required to be conveyed to the Federal or State Government or appropriate municipal corporation.  43 U.S.C. sec. 1613(c)(4).  Of importance, the land on which the Galena airport is located had been conveyed to the State of Alaska and the Federal Government.

A.    <u>Definition Under the IFA</u>

The IFA defines "reservation" as: "Indian reservations, public domain Indian allotments, former Indian reservations in Oklahoma, and land held by incorporated Native groups, regional corporations, and village corporations under the provisions of the Alaska Native Claims Settlement Act."  25 U.S.C. sec. 1452(d).  The land on which petitioner's Galena airport is located does not qualify as a "reservation" under the IFA.  The land is not an Indian reservation because the enactment of ANCSA

---

[9](...continued)
1618(a).

revoked the Indian reservation system in Alaska. Additionally, the land is not held by any incorporated Native groups, regional corporations, or village corporations as provided by ANCSA. The land was specifically excluded from ownership by any of the ANCSA corporations because the land was used for airport purposes. 43 U.S.C. sec. 1613(c)(4).

B.  Definition Under the ICWA

The ICWA defines "reservation" as: "Indian country as defined in section 1151 of Title 18 and any lands, not covered under such section, title to which is either held by the United States in trust for the benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to a restriction by the United States against alienation." 25 U.S.C. sec. 1903(10). We note that the land on which the Galena airport is located is not held by the United States in trust for the benefit of any Indian tribe or individual and is not held by any Indian tribe or individual subject to a restriction by the United States against alienation. "Indian country" is:

> (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

18 U.S.C. sec. 1151. The land on which the Galena airport is located does not fit the definition as provided in (a) or (c) because the land is not within the limits of an Indian reservation, and is not an Indian allotment to which the Indian titles have not been extinguished.

The land is also not a "dependent Indian community" as provided for in (b) of the above section. The U.S. Supreme Court held that a "dependent Indian community" exists when Indian lands have been set aside by the Federal Government for the use of the Indians as Indian land, and the lands must be under Federal superintendence. Alaska v. Native Vill., supra at 527. The land has not been set aside by the Federal Government for the use as Indian land because the land was conveyed to the Federal Government for airport purposes. Additionally, the land is not under the Federal superintendence that existed previously; i.e., the Federal Government does not act as a guardian over it. Id. at 533.

We conclude that the land on which the Galena airport is located is not an "Indian reservation" within the meaning of section 45A. Additionally, we conclude that the Galena airport is not located "within an Indian reservation" within the meaning of section 45A because the Galena airport is not located on an Indian reservation. Thus, we hold that petitioner is not entitled to the IEC with respect to wages paid to employees who

perform substantially all their services in petitioner's employ at the airport.

In reaching all of our holdings herein, we have considered all arguments made by the parties, and, to the extent not mentioned above, we find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.