T.C. Summary Opinion 2002-124


UNITED STATES TAX COURT


WILLIAM LENEHAN III AND BARBARA LENEHAN, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2653-01S.              Filed October 2, 2002.


Andrew Shabshelowitz, for petitioners.

Christine Colley, for respondent.


ARMEN, Special Trial Judge:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect at the time that the petition was filed.[1]  The decision to
be entered is not reviewable by any other court, and this opinion
should not be cited as authority.

---

[1]Unless otherwise indicated, all subsequent section and
subtitle references are to the Internal Revenue Code in effect
for 1997, the taxable year in issue, and all Rule references are
to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioners' Federal income tax for 1997 in the amount of $6,062.

The only issue for decision is whether investment income, as defined by section 163(d)(4)(B), includes a long-term capital loss carryover (loss carryover) for purposes of calculating the section 163(d)(1) limitation on the investment interest expense deduction. We hold that it does.

Background

This case was submitted fully stipulated under Rule 122. We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

Petitioners resided in Sarasota, Florida, at the time their petition was filed with the Court.

A. Petitioners' Form 1040 for 1997

Petitioners timely filed a joint Form 1040, U.S. Individual Income Tax Return, for 1997. Petitioners attached to their Form 1040 the following Schedules and Forms that are pertinent to this case: Schedule A, Itemized Deductions; Schedule B, Interest and Dividend Income; Schedule D, Capital Gains and Losses; Form 4797, Sales of Business Property; and Form 4952, Investment Interest Expense Deduction.

On Schedule A, petitioners claimed, inter alia, a $26,721 investment interest expense deduction. Petitioners calculated this amount on Form 4952, as shown below:

Part I.  Total Investment Interest Expense
Line 1.  Investment interest expense
   paid or accrued in 1997                            $2,505
Line 2.  Disallowed investment interest
   expense from 1996 Form 4952, line 7               24,216
Line 3.  **Total investment interest expense**       26,721

Part II.  Net Investment Income
Line 4a.  Gross income from property held for
   investment (excluding any net gain from the
   disposition of property held for investment)   [1]5,044
Line 4b.  Net gain from the disposition
   of property held for investment       $114,738
Line 4c.  Net capital gain from the
   disposition of property held for
   investment                              65,721
Line 4d.  Subtract line 4c from line 4b              49,017
Line 4e.  Enter all or part of the amount
   on line 4c that you elect to include
   in investment income                                    0
Line 4f.  Investment Income.
   Add lines 4a, 4d, and 4e.                         54,061
Line 5.  Investment expenses                               0
Line 6.  **Net investment income**.
   Subtract line 5 from line 4f.                     54,061

Part III.  Investment Interest Expense Deduction
Line 7.  Disallowed investment interest
   expense to be carried forward to 1998.
   Subtract line 6 from line 3.                            0
Line 8.  **Investment interest expense deduction**.
   Enter the smaller of line 3 or 6.                 26,721

[1] This is the total amount of petitioners' interest ($1,075) and dividend ($3,969) income reported on Schedule B.

Petitioners calculated most of the lines on Form 4952 from

Schedule D, column f, where they reported the following amounts:

Line 1.  Short-term capital gains and losses        $4,002
Line 2.  Enter your short-term totals,
   if any, from Schedule D-1, line 2                 45,015
Line 7.  **Net short-term capital gain or (loss)**     $49,017
Line 8.  Long-term capital gains and losses         (3,601)
Line 9.  Enter your long-term totals,
   if any, from Schedule D-1, line 9                 69,322
Line 11.  Gain from Form 4797, Part I * * *         [1]12,751
Line 14.  Long-term capital loss carryover        (141,621)
Line 16.  **Net long-term capital gain or (loss)**      (63,149)

[1] This gain resulted from petitioners' sale of a condominium that was sec. 1250 property and, therefore, was not included as an item of investment income.  See sec. 163(d)(4)(D).

Petitioners also reported an overall capital loss of $14,132 as follows:

| | |
|---|---|
| Net long-term capital loss | ($63,149) |
| Net short-term capital gain | 49,017 |
| Overall capital loss | [1](14,132) |

[1]On Form 1040, Line 13 (Capital gain or (loss)), petitioners deducted the maximum of $3,000 of the $14,132 overall capital loss against ordinary income. See sec. 1211(b). Petitioners carried forward the remaining $11,132 of net capital loss pursuant to sec. 1212(b)(1)(B).

In addition, petitioners calculated the $114,738 net gain (Form 4952, line 4b) and the $65,721 net capital gain (Form 4952, line 4c) as follows:

| | |
|---|---|
| Schedule D, line 8 | $(3,601) |
| Schedule D, line 9 | 69,322 |
| NET CAPITAL GAIN | 65,721 |
| Plus: Net Short-Term Capital Gain | 49,017 |
| NET GAIN | 114,738 |

Petitioners did not include their $141,621 loss carryover as an item of investment income. Petitioners determined that because their net investment income of $54,061 was greater than their total investment interest expense of $26,721, they were entitled to take a full deduction of $26,721 for investment interest expense.

B. Respondent's Deficiency Notice

In the notice of deficiency, respondent disallowed $21,677 of petitioners' $26,721 investment interest expense deduction on the basis that the deductible amount is limited to petitioners' net investment income of $5,044. Respondent determined that petitioners' $141,621 loss carryover was an item of investment income and, therefore, resulted in zero net gain, zero net

capital gain, and net investment income of $5,044. Respondent

recalculated petitioners' Form 4952 as shown below:

```
Part I.  Total Investment Interest Expense
Line 1.  Investment interest expense
   paid or accrued in 1997                              $2,505
Line 2.  Disallowed investment interest
   expense from 1996 Form 4952, line 7                  24,216
Line 3.  Total investment interest expense             26,721


Part II.  Net Investment Income
Line 4a.  Gross income from property held for
   investment (excluding any net gain from the
   disposition of property held for investment)          5,044
Line 4b.  Net gain from the disposition
   of property held for investment            $0
Line 4c.  Net capital gain from the
   disposition of property held for
   investment                                  0
Line 4d.  Subtract line 4c from line 4b                        0
Line 4e.  Enter all or part of the amount
   on line 4c that you elect to include
   in investment income                                        0
Line 4f.  Investment Income.
   Add lines 4a, 4d, and 4e.                              5,044
Line 5.  Investment expenses                                   0
Line 6.  Net investment income.
   Subtract line 5 from line 4f.                         5,044


Part III.  Investment Interest Expense Deduction
Line 7.  Disallowed investment interest
   expense to be carried forward to 1998.
   Subtract line 6 from line 3.                          21,677
Line 8.  Investment interest expense deduction.
   Enter the smaller of line 3 or 6.                     5,044
```

Respondent's disallowance of $21,677 of petitioners'

investment interest expense deduction increased petitioners'

taxable income by $21,677 and resulted in a deficiency in income

tax of $6,062. Respondent further determined that petitioners

may carryforward and deduct in 1998 the $21,677 of investment

interest expense disallowed for 1997.[2]

---

[2]We cannot (and do not) decide whether petitioners are entitled to such a deduction because only the 1997 tax year is before us. Sec. 7442.

Discussion[3]

The parties do not dispute petitioners' entitlement to an investment interest expense deduction under section 163(a), but the parties do dispute the calculation of that deduction. The main issue of contention between the parties is whether the term "investment income", as defined by section 163(d)(4)(B), includes petitioners' loss carryover for purposes of calculating the limitation on the investment interest expense deduction.

The parties have not cited any case deciding the narrow legal question presented herein, and we are not aware of any such case. In resolving this issue, we rely on section 163(d) and its underlying framework and legislative history.

A. Statutory Framework

The starting point for the interpretation of a statute is the language itself. Consumer Prod. Safety Comm. v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980); see also United States v. Bryant, 671 F.2d 450, 453 (11th Cir. 1982); Warbelow's Air Ventures, Inc. v. Commissioner, 118 T.C. 579, 583 (2002). We interpret the statute with reference to the legislative history primarily to learn the purpose of the statute and to resolve any ambiguity in the words contained in the text. Allen v.

---

[3]We need not decide whether sec. 7491, concerning burden of proof, applies to the present case because the facts are not in dispute and the issue is one of law. See Higbee v. Commissioner, 116 T.C. 438 (2001).

<u>Commissioner</u>, 118 T.C. 1, 7 (2002) (and cases cited therein); see also <u>City of New York v. Commissioner</u>, 103 T.C. 481, 489 (1994), affd. 70 F.3d 142 (D.C. Cir. 1995). Moreover, even where the statutory language appears clear, we may seek out any reliable evidence as to legislative purpose. <u>City of New York v. Commissioner</u>, <u>supra</u>.

### 1. Section 163

For individual taxpayers, section 163(a) allows a deduction for all interest paid or accrued within the taxable year on indebtedness. Section 163(d), however, limits the amount of the investment interest expense deduction to the taxpayer's net investment income for the taxable year.[4] In other words, the higher the taxpayer's net investment income, the more investment interest expense the taxpayer is allowed to deduct for the taxable year. Furthermore, section 163(d)(2) allows the taxpayer to carryforward any investment interest expense disallowed under the general limitation for the taxable year and deduct it as investment interest expense paid or accrued in the succeeding taxable year to the extent that the taxpayer has investment income in that year.

---

[4]The Tax Reform Act of 1969, Pub. L. 91-172, sec. 221(a), 83 Stat. 478, 574, originally enacted sec. 163(d) effective for taxable years beginning after Dec. 31, 1971.

Section 163(d)(4)(A) defines net investment income as the excess of investment income over investment expense.  Section 163(d)(4)(B),[5] in turn, defines investment income as follows:

>    (B)  Investment Income.--The term "investment income" means the sum of--
>
>        (i) gross income from property held for investment (other than any gain taken into account under clause (ii)(I)),
>
>        (ii) the excess (if any) of--
>
>            (I) the <u>net gain</u> attributable to the disposition of property held for investment, over
>
>            (II) the <u>net capital gain</u> determined by only taking into account gains and losses from dispositions of property held for investment, plus
>
>        (iii) so much of the net capital gain referred to in clause (ii)(II) (or, if lesser, the net gain referred to in clause (ii)(I)) as the taxpayer elects to take into account under the clause.  [Emphasis added.]

At issue in the instant case is the calculation of section 163(d)(4)(B)(ii).  To that end, the meaning of the terms "net gain" and "net capital gain" are integral to our analysis.

###    2.  Net Gain

Neither section 163, the regulations, the case law, nor the statute's legislative history defines the term "net gain".  If a

---

[5]The Omnibus Budget Reconciliation Act of 1993, Pub. L. 103-66, sec. 13206(d)(1), 107 Stat. 312, 467, amended sec. 163(d)(4)(B) effective for taxable years beginning after Dec. 31, 1992.

term is used in the Internal Revenue Code (I.R.C.) without definition and the legislative history fails to provide any insight or guidance as to the appropriate definition, we will use the ordinary and common usage of the term in applying that provision.  Texaco Inc. and Subs. v. Commissioner, 101 T.C. 571, 575 (1993), affd. 98 F.3d 825 (5th Cir. 1996); see Commissioner v. Brown, 380 U.S. 563, 570-571 (1965); Crane v. Commissioner, 331 U.S. 1, 6-7 (1947); Rome I, Ltd. v. Commissioner, 96 T.C. 697, 704 (1991); Union Pac. Corp. v. Commissioner, 91 T.C. 32, 38-40 (1988); First Sav. & Loan Association v. Commissioner, 40 T.C. 474, 482 (1963).  We look, therefore, to the ordinary and common usage of the term "net gain" in applying the statute.

Neither Black's Law Dictionary (6th ed. 1990) nor Webster's Third New International Dictionary (1993) specifically defines the term "net gain".  However, the ordinary and common usage of the term "net gain" connotes the pecuniary gain remaining after offsetting gains against losses.  Presumably, a prerequisite to the existence of net gain is that the taxpayer's gains exceed the taxpayer's losses.

Black's Law Dictionary 957 (7th ed. 1999) defines the term "net loss" as "The excess of all expenses and losses over all revenues and gains."  By analogy, the natural, ordinary, and familiar meaning of the term "net gain" is the excess of all

gains over all losses.[6]  Therefore, we conclude as a matter of law that the term "net gain" for purposes of section 163(d)(4)(B) means the excess, if any, of total gains over total losses from the disposition of property held for investment.[7]

### 3.  Capital Gains and Losses

Sections 1201 through 1223 generally define capital gains and losses under Subtitle A, Income Taxes, unless otherwise indicated.[8]  Accordingly, we turn to sections 1222 and 1212 to define the term "net capital gain".

Section 1222(11) defines the term "net capital gain" as "the excess of the net long-term capital gain for the taxable year over the net short-term capital loss for such year."  (Emphasis added.)  The phrase "long-term" applies to the category of gains and losses arising from the sale or exchange of capital assets held for more than 1 year; the phrase "short-term" applies to the category of gains and losses arising from the sale or exchange of

---

[6]See, e.g., similar definitions under sec. 1222(9) that defines "capital gain net income" as "the excess of the gains from the sales or exchanges of capital assets over the losses from such sales or exchanges", and under sec. 1.469-2T(e)(3)(ii)(E)(3), Temporary Income Tax Regs., 53 Fed. Reg. 5719 (Feb. 25, 1988), that defines "net gain" for purposes of that section as "the amount by which the gains from the sale of all of the property * * * exceed the losses (if any) from such sale".

[7]We note that respondent has adopted this view and has utilized this definition on Form 4952, General Instructions, for Line 4b.

[8]Subtitle A includes sec. 163.

capital assets held for 1 year or less.  Sec. 1.1222-1(a), Income Tax Regs; see also sec. 1222(1) through (4).  The term net short- or long-term capital gain means the excess of the short- or long-term gains over the short- or long-term losses for a given tax year, as the case may be.  Sec. 1222(5), (7).  The term net short- or long-term capital loss means the excess of the short- or long-term losses over the short- or long-term gains for a given tax year, as the case may be.  Secs. 1222(6), (8).

In the definition of "net long-term capital gain", the prior year's long-term capital loss that is carried forward to the current taxable year under section 1212(b)(1)(B)[9] is treated as a long-term capital loss for such taxable year.  Sec. 1.1222-1(b)(2), Income Tax Regs.  Furthermore, the pertinent parts of the regulations provide:

> [A] long-term capital loss carryover shall be carried over to the succeeding taxable year and <u>treated as a long-term capital loss sustained in such succeeding taxable year</u>.  The carryovers are <u>included</u> in the succeeding taxable year in the determination of the amount of the short-term capital loss, the net short-term capital gain or loss, <u>the long-term capital loss, and the net long-term capital gain or loss in such year, the net capital loss in such year</u>, and the capital loss carryovers from such year.  [Sec. 1.1212-1(b)(1), Income Tax Regs.; emphasis added.]

---

[9]Sec. 1212(b)(1) provides in pertinent part: "If a taxpayer other than a corporation has a net capital loss for any taxable year, * * * (B) the excess of the net long-term capital loss over the net short-term capital gain for such year shall be a long-term capital loss in the succeeding taxable year."

B.  Legislative History

Section 163(d) was enacted to curb the practice of using the investment interest expense deduction to offset taxable income (e.g., noninvestment income) in a current taxable year; i.e., to prevent the "mismatching" of investment income and investment expenses.[10]

As relevant to this case, the Tax Reform Act of 1969 (TRA 1969), Pub. L. 91-172, sec. 221(a), 83 Stat. 478, 574, initially limited the deduction for investment interest expense to $25,000, plus the amount of net investment income, <u>plus</u> the amount of <u>long-term capital gain</u>.[11]  Again as relevant to this case, the TRA 1969 amendment defined investment income as (i) the gross income from interest and dividends, (ii) the net short-term capital gain attributable to the disposition of property held for investment, and (iii) any amount treated under sections 1245 and 1250 as ordinary income.  See sec. 163(d)(3)(B), I.R.C. 1954 as amended by TRA 1969.

---

[10]H. Rept. 91-413, at 72 (1969), 1969-3 C.B. 200, 245, states in pertinent part:

> Where the taxpayer's investment, however, produces little current income, the effect of allowing a current deduction for the interest is to produce a mismatching of the investment income and related expenses of earning that income.  In addition, the excess interest, in effect, is used by the taxpayer to offset other income, such as his salary, from taxation.

[11]Sec. 163(d)(1)(C), I.R.C. 1954 as amended by TRA 1969, is similar to the sec. 163(d)(4)(B)(ii)(II) net capital gain prong.

In 1976, Congress revised section 163(d) to reduce the use of this deduction to shelter noninvestment types of income.[12] See sec. 209(a) of the Tax Reform Act of 1976 (TRA 1976), Pub. L. 94-455, 90 Stat. 1520, 1542.  The definition of investment income remained unchanged, but the TRA 1976 amendment eliminated any offset of investment interest expense against long-term capital gain.  Id.

In 1986, Congress expanded the scope of the investment interest expense limitation and altered the calculation of the limitation by including "any net gain attributable to the disposition of property held for investment".  Sec. 511(a) of the Tax Reform Act of 1986 (TRA 1986), Pub. L. 99-514, 100 Stat. 2085, 2320; see H. Conf. Rept. 99-841 (1986), 1986-3 C.B. (Vol. 4) 152, wherein the conference committee articulated the intent to expand the definition of investment income "to include the same items as under * * * [TRA 1976] plus the taxable portion of net gain from the disposition of investment property."[13] (Emphasis added.)  The TRA 1986 amendment allowed capital gains

---

[12]See H. Rept. 94-658 at 102, 1976-3 C.B. (Vol. 2) 695, 794; S. Rept. 94-938 at 106, 1976-3 C.B. (Vol. 3) 49, 144; Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1976 at 103 (J. Comm. Print 1976).

[13]See also H. Rept. 99-426, 1986-3 C.B. (Vol. 2) 300 ("[investment income] also includes the nondeductible portion of net long-term capital gain on investment property."); S. Rept. 99-313, 1986-3 C.B. (Vol. 3) 805 ("[investment income] also includes the gain on investment property.").

to be taken into account as investment income primarily because

capital gain and ordinary income were taxed at the same rates.[14]

However, by 1992, the tax rate differential had widened,

thereby encouraging individuals to structure their transactions

in order to maximize their capital gain potential.  Therefore, in

1993, Congress reversed the treatment of capital gains under

section 163(d)(4)(B) so that net capital gain was again excluded

from investment income unless the taxpayer expressly elected to

include it.[15]  See sec. 13206(d) of the Omnibus Budget

Reconciliation Act of 1993, Pub. L. 103-66, 107 Stat. 312, 467.

The purpose of this amendment was to prevent a taxpayer who

recognizes long-term capital gain taxed at a favorable capital

gain rate from using that same gain to deduct otherwise

nondeductible investment interest expense against ordinary

---

[14]See Staff of Joint Comm. on Taxation, General Explanation
of the Tax Reform Act of 1986:

> Under prior law, no part of long-term capital gains were
> included in net investment income.  Congress concluded that
> the continuation of this rule was inappropriate because
> long-term capital gains are generally taxed at the same
> effective rate as ordinary income when the Act is fully
> phased in."
>
>         *   *   *   *   *   *   *
>
> Investment income includes * * * gain (whether long-term or
> short-term) attributable to the disposition of property held
> for investment * * *. [Comm. Print 1987 at 263, 265.]

[15]Sec. 1.163(d)-1(a), Income Tax Regs., further provides
that "As a consequence, the capital gains affected by this
election are not eligible for the maximum capital gain rate of 28
percent."

income.  See H. Rept. 103-111, at 641-642 (1993), 1993-3 C.B. 167, 217-218; H. Conf. Rept. 103-213, at 578 (1993), 1993-3 C.B. 393, 456.  To that end, Congress intended to account for "taxable" capital gains for purposes of section 163(d).  To accept a broader reading to include nontaxable capital gains would thus defeat the purpose of the section 163(d)(1) limitation.

C.  Analysis

For the reasons stated below, we conclude that petitioners' loss carryover is an item of investment income under section 163(d)(4)(B) and, accordingly, that it serves to limit petitioners' investment interest expense deduction to $5,044.

Petitioners contend that respondent mischaracterized their investment income by including the loss carryover.  Petitioners argue that section 163(d)(4)(ii) requires inclusion of only their short-term capital gains and, furthermore, that net gain and net capital gain do not require inclusion of their loss carryover. On brief, petitioners argue that Zohoury v. Commissioner, T.C. Memo. 1983-597, and section 4940(c)(4)(C) support their contention.  We reject petitioners' arguments.

First, petitioners' reliance on Zohoury is misplaced.  The issue in Zohoury involved whether interest paid on an intra-family indebtedness constituted investment interest.  After concluding that the taxpayers' intrafamily indebtedness interest

constituted investment interest, the Court then discussed the investment interest expense deduction limitation for the limited purpose of determining the taxpayers' allowable deduction for the taxable year. The Court did not address the treatment of a loss carryover for purposes of calculating investment income because the taxpayers did not have a loss carryover. Furthermore, at the time Zohoury was decided, net investment income did not include long-term capital gain. See TRA 1976 sec. 209(a), 90 Stat. 1542. Therefore, the Court in Zohoury did not undertake the type of substantive analysis of the term "investment income" that is required here.

Second, petitioners' reading of the statute is at odds with the plain language of the statute. Essentially, petitioners attempt to attach the phrase "short-term gain" under the TRA 1976 amendment to the current definition of investment income, even though the phrase does not appear anywhere in section 163(d)(4)(B)(ii). If Congress intended investment income to include only short-term gain, the phrase "short-term gain" would have remained in the definition of investment income, which it does not. If we were to adopt petitioners' reading of the statute, we would render meaningless Congress's explicit reference in section 163(d)(4)(B)(ii) to the terms "net gain" and "net capital gain". Clearly, Congress did not intend this result, nor do we adopt it.

Lastly, petitioners argue that the reference in section 4940(c)(4)(C) to "no capital loss carryovers" clearly means that investment income does not include the loss carryover for purposes of section 163(d).  We disagree.

Section 4940(c)(4)(C) defines the term "net investment income", in part, as follows:

> (1) In General.--For purposes of subsection (a), the net investment income is the amount by which (A) the sum of the gross investment income and the capital gain net income exceeds (B) the deductions allowed by paragraph (3).  <u>Except to the extent inconsistent with the provisions of this section, net investment income shall be determined under the principles of subtitle A</u>.

> \*   \*   \*   \*   \*   \*   \*

> (4) Capital Gains and Losses.--For purposes of paragraph (1) in determining capital gain net income

> \*   \*   \*   \*   \*   \*   \*

> (C) Losses from sales or other dispositions of property shall be allowed only to the extent of gains from such sales or other dispositions, and <u>there shall be no capital loss carryovers</u>. [Emphasis added.]

However, section 4940 (Excise Tax Based on Investment Income) is applicable to Subtitle D--Miscellaneous Excise Taxes, Chapter 42A--Private Foundations and Other Certain Tax-exempt Organizations.  Here, we are dealing with income taxes on individual taxpayers; i.e., Subtitle A--Income Taxes, rather than an excise tax on a private foundation or tax-exempt organization.  In addition, there is no cross-reference between sections 4940 and 163(d) to make section 4940 applicable to this case.

Furthermore, section 4940(c)(1) specifically provides that "except to the extent inconsistent with the provisions of this section, net investment income shall be determined under the principles of subtitle A." The rule under section 4940(c)(4)(C) specifically excluding capital loss carryovers from the calculation of capital gains and losses applies only to excise taxes, and not to the present case. Consequently, section 4940(c)(4)(C) does not support petitioners' interpretation of the term "investment income" under section 163(d)(4)(B). As pertinent to our inquiry, we rely on section 163(d)(4)(B) as the controlling definition for the term "investment income" in conjunction with sections 1212 and 1222.

We now turn to the amount of petitioners' investment income. Petitioners carried forward from 1996 a $141,621 long-term capital loss. Sec. 1212(b)(1)(B). This carryover is treated as a long-term capital loss for 1997. Sec. 1.1222-1(b)(2), Income Tax Regs. Accordingly, the loss carryover is included in 1997 for purposes of calculating petitioners' long-term capital loss, net long-term capital loss, net capital loss, and capital loss carryover to 1998. Sec. 1.1212-1(b)(1), Income Tax Regs. It follows, then, that it is included in the calculation of net gain and net capital gain in 1997 for purposes of section

163(d)(4)(B)(ii).  This gives petitioners a $75,900[16] long-term capital loss, and therefore, zero net capital gain.  Net gain is also equal to zero because total gains do not exceed total losses ($49,017 less $75,900).  Therefore, petitioners have net investment income of $5,044 and an allowable investment interest expense deduction of $5,044.

Petitioners selectively chose to include the loss carryover when it placed them in a better tax position.  Thus, petitioners included the loss carryover for purposes of calculating the $3,000 capital loss deduction.  If petitioners had not included the loss carryover when calculating their overall capital loss, they would have had an overall capital gain rather than a capital loss.

We hold as a matter of law that petitioners' loss carryover is an integral part of the equation in calculating investment income under section 163(d)(4)(B).  Were the loss carryover not included, petitioners would receive a double tax benefit.  Under petitioners' approach, long-term capital gains would be offset by the loss carryover and not subjected to taxation.  Then, those same capital gains that escaped taxation would be used to increase investment income and, simultaneously, the investment interest expense deduction.  Essentially, petitioners would

---

[16]This is the sum of Schedule D, lines 8, 9, and 14 (-$3,601 +$69,322 -$141,621).

shelter noninvestment income with nontaxable income (e.g., capital gains offset by the loss carryover). This double tax benefit is clearly not permitted by section 163(d).

D. Conclusion

We hold that investment income, as defined by section 163(d)(4)(B), requires inclusion of petitioners' loss carryover for purposes of calculating the section 163(d)(1) limitation on the investment interest expense deduction. We hold further that petitioners' investment interest expense deduction is limited to $5,044. In view of the foregoing, we sustain respondent's determination on the disputed issue.

We have considered all of the other arguments made by petitioners and, to the extent that we have not specifically addressed them, we find them to be without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

Decision will be entered

for respondent.