T.C. Summary Opinion 2003-160

UNITED STATES TAX COURT

RICHARD GORKES, JR. AND SUSAN GORKES, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15415-02S.                    Filed October 31, 2003.

Richard Gorkes, Jr. and Susan Gorkes, pro sese.

Brianna Basaraba, for respondent.


ARMEN, Special Trial Judge:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect at the time that the petition was filed.[1]  The decision to
be entered is not reviewable by any other court, and this opinion
should not be cited as authority.

_____

[1]  Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for the
taxable years in issue, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioners' Federal income taxes for the taxable years 1999, 2000, and 2001 in the amounts of $3,961, $6,583, and $9,715 respectively.[2]

After concessions by the parties, the sole issue for decision is whether petitioners are entitled to investment interest expense deductions for the taxable years 1999, 2000, and 2001 in excess of the amounts allowed by respondent. We hold that they are not.

Background

Some of the facts have been stipulated, and they are so found. Petitioners resided in Lilburn, Georgia, at the time that their petition was filed with the Court.

Petitioners timely filed their Form 1040, U.S. Individual Income Tax Return, for the taxable year 1999. Petitioners attached to their return Schedule A, Itemized Deductions, and claimed an investment interest expense deduction of $31,215. Petitioners calculated this amount on an attached Form 4952, Investment Interest Expense Deduction, as shown below:

---

[2] All numbers are rounded to the nearest dollar.

Part I.  Total Investment Interest Expense
Line 1.  Investment interest expense
   paid or accrued in 1999                          $63,807
Line 2.  Disallowed investment interest
   expense from 1998 Form 4952, line 7        ---
Line 3.  **Total investment interest expense**     63,807

Part II.  Net Investment Income
Line 4a.  Gross income from property held for
   investment (excluding any net gain from the
   disposition of property held for investment)   31,215
Line 4b.  Net gain from the disposition
   of property held for investment        $  ---
Line 4c.  Net capital gain from the
   disposition of property held for
   investment                         ---
Line 4d.  Subtract line 4c from line 4b         ---
Line 4e.  Enter all or part of the amount
   on line 4c that you elect to include
   in investment income                 ---
Line 4f.  Investment Income.
   Add lines 4a, 4d, and 4e.           31,215
Line 5.  Investment expenses           ---
Line 6.  **Net investment income.**
   Subtract line 5 from line 4f.        31,215

Part III.  Investment Interest Expense Deduction
Line 7.  Disallowed investment interest
   expense to be carried forward to 2000.
   Subtract line 6 from line 3.        32,592
Line 8.  **Investment interest expense deduction.**
   Enter the smaller of line 3 or 6.    31,215

Petitioners timely filed their Form 1040 for the taxable year 2000.  Petitioners attached to their return Schedule A and claimed an investment interest expense deduction of $43,271. Petitioners calculated this amount on an attached Form 4952 as shown below:

```
Part I.   Total Investment Interest Expense
Line 1.   Investment interest expense
   paid or accrued in 2000                              $92,036
Line 2.   Disallowed investment interest
   expense from 1998 Form 4952, line 7                    [1]---
Line 3.   Total investment interest expense             92,036

Part II.   Net Investment Income
Line 4a.  Gross income from property held for
   investment (excluding any net gain from the
   disposition of property held for investment)          43,271
Line 4b.  Net gain from the disposition
   of property held for investment            $   ---
Line 4c.  Net capital gain from the
   disposition of property held for
   investment                                     ---
Line 4d.  Subtract line 4c from line 4b                    ---
Line 4e.  Enter all or part of the amount
   on line 4c that you elect to include
   in investment income                                    ---
Line 4f.  Investment Income.
   Add lines 4a, 4d, and 4e.                              43,271
Line 5.   Investment expenses                              ---
Line 6.   Net investment income.
   Subtract line 5 from line 4f.                          43,271

Part III.   Investment Interest Expense Deduction
Line 7.   Disallowed investment interest
   expense to be carried forward to 2001.
   Subtract line 6 from line 3.                           48,765
Line 8.   Investment interest expense deduction.
   Enter the smaller of line 3 or 6.                      43,271
```

[1] Petitioners did not carry forward the disallowed investment interest expense of $32,592 from 1999.

Petitioners timely filed their Form 1040 for the taxable year 2001.  Petitioners attached to their return Schedule A and claimed an investment interest expense deduction of $42,039. Petitioners calculated this amount on an attached Form 4952 as shown below:

Part I.  Total Investment Interest Expense
Line 1.  Investment interest expense
   paid or accrued in 2001                        $2,779
Line 2.  Disallowed investment interest
   expense from 2000 Form 4952, line 7       48,765
Line 3.  **Total investment interest expense**    51,544

Part II.  Net Investment Income
Line 4a.  Gross income from property held for
   investment (excluding any net gain from the
   disposition of property held for investment)   42,039
Line 4b.  Net gain from the disposition
   of property held for investment       $  ---
Line 4c.  Net capital gain from the
   disposition of property held for
   investment                      ---
Line 4d.  Subtract line 4c from line 4b          ---
Line 4e.  Enter the amount from line 4c
   that you elect to include in investment income     ---
Line 4f.  Investment Income.
   Add lines 4a, 4d, and 4e.             42,039
Line 5.  Investment expenses               ---
Line 6.  **Net investment income**.
   Subtract line 5 from line 4f.           42,039

Part III.  Investment Interest Expense Deduction
Line 7.  Disallowed investment interest
   expense to be carried forward to 2002.
   Subtract line 6 from line 3.           9,505
Line 8.  **Investment interest expense deduction**.
   Enter the smaller of line 3 or 6.       42,039

Petitioners attached a Schedule D, Capital Gains and Losses, to their tax return for each taxable year at issue.  Petitioners reported total net capital losses for each taxable year as follows:

|                                        | 1999      | 2000         | 2001         |
|----------------------------------------|-----------|--------------|--------------|
| Net short-term capital gain or (loss)[1] | ($27,672) | ($1,781,652) | ($2,109,359) |
| Net long-term capital gain or (loss)[2]  | (9,825)   | (2,609)      | (107,733)    |
| Total net capital loss[3]                | (37,497)  | (1,784,261)  | (2,217,092)  |

[1] The net short-term capital loss for each taxable year included short-term carryover losses to 1999, 2000, and 2001 of $111,114, $27,672, and $1,781,652, respectively.
[2] The net long-term capital loss for each taxable year included long-term carryover losses to 1999, 2000, and 2001 of $21,391, $9,825, and $2,609, respectively.
[3] For each taxable year, petitioners deducted the maximum of $3,000 of their overall capital losses against ordinary income on their Form 1040, Line 13 (Capital gain or (loss)). See sec. 1211(b).

In the notice of deficiency, respondent disallowed a portion of petitioners' investment interest expense deductions for 1999, 2000, and 2001 in the amounts of $26,076, $38,784, and $49,483, respectively.[3]  Respondent contends that petitioners' "gross income from property held for investment" for 1999, 2000, and 2001 was $5,139, $4,487, and $453, respectively.[4]  Respondent also argues that because petitioners had a total net capital loss in each of the taxable years at issue, petitioners had zero "net gain from the disposition of property held for investment" for purposes of determining their "net investment income" for each taxable year.[5]

---

[3] Respondent concedes that the disallowed portion of investment interest expense deduction for 2001 erroneously includes otherwise deductible mortgage interest.

[4] Petitioners concede these amounts of "gross income from property held for investment" for each taxable year at issue.

[5] Respondent also concedes the amount of investment interest expenses claimed by petitioners for each taxable year at issue.

Petitioners contend that for purposes of determining the "net investment income" for each taxable year, "net gain from the disposition of property held for investment" includes only their items of capital gain.[6] Specifically, petitioners argue that their capital losses and capital loss carryovers are not included in the calculation of "net gain from the disposition of property held for investment".

Discussion[7]

The parties do not dispute petitioners' entitlement to an investment interest expense deduction under section 163(a), but the parties do dispute the calculation of that deduction. The main issue of contention between the parties is whether the term "investment income", as defined by section 163(d)(4)(B), includes petitioners' capital losses and capital loss carryovers for purposes of calculating the limitation on the investment interest expense deduction.

In resolving this issue, we rely on section 163(d) and its underlying framework and legislative history.

---

[6] Petitioners contend that they failed to properly include their capital gains for purposes of calculating the "net gain from the disposition of property held for investment" on their Forms 4952 for each taxable year at issue.

[7] We decide the issue in this case without regard to the burden of proof. See sec. 7491; Rule 142(a); Higbee v. Commissioner, 116 T.C. 438 (2001).

A.  Statutory Framework

The starting point for the interpretation of a statute is the language itself.  Consumer Prod. Safety Comm. v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980); see also United States v. Bryant, 671 F.2d 450, 453 (11th Cir. 1982); Warbelow's Air Ventures, Inc. v. Commissioner, 118 T.C. 579, 583 (2002).  We interpret the statute with reference to the legislative history primarily to learn the purpose of the statute and to resolve any ambiguity in the words contained in the text.  Allen v. Commissioner, 118 T.C. 1, 7 (2002) (and cases cited therein); see also City of New York v. Commissioner, 103 T.C. 481, 489 (1994), affd. 70 F.3d 142 (D.C. Cir. 1995).  Moreover, even where the statutory language appears clear, we may seek out any reliable evidence as to legislative purpose.  City of New York v. Commissioner, supra.

1.  Section 163

As a general rule, section 163(a) allows a deduction for all interest paid or accrued within the taxable year on indebtedness. In the case of an individual, however, section 163(d) limits the amount of the investment interest expense deduction to the taxpayer's net investment income for the taxable year.[8]  In other words, the higher the taxpayer's net investment income, the more

_____

[8]  The Tax Reform Act of 1969, Pub. L. 91-172, sec. 221(a), 83 Stat. 574, originally enacted sec. 163(d), effective for taxable years beginning after Dec. 31, 1971.

investment interest expense the taxpayer is allowed to deduct for the taxable year.  Furthermore, section 163(d)(2) allows the taxpayer to carryforward any investment interest expense disallowed under the general limitation for the taxable year and deduct it as investment interest expense paid or accrued in the succeeding taxable year to the extent that the taxpayer has net investment income in that year.

Section 163(d)(4)(A) defines net investment income as the excess of investment income over investment expense.  Section 163(d)(4)(B),[9] in turn, defines investment income as follows:

> (B)  Investment Income.--The term "investment income" means the sum of--
>
>> (i) gross income from property held for investment (other than any gain taken into account under clause (ii)(I)),
>>
>> (ii) the excess (if any) of--
>>
>>> (I) the <u>net gain</u> attributable to the disposition of property held for investment, over
>>>
>>> (II) the net capital gain determined by only taking into account gains and losses from dispositions of property held for investment, plus
>>
>> (iii) so much of the net capital gain referred to in clause (ii)(II) (or, if lesser, the net gain referred to in clause

---

[9]  The Omnibus Budget Reconciliation Act of 1993, Pub. L. 103-66, sec. 13206(d)(1), 107 Stat. 467, amended sec. 163(d)(4)(B) effective for taxable years beginning after Dec. 31, 1992.

(ii)(I)) as the taxpayer elects to take into account under this clause.  [Emphasis added.]

At issue in the instant case is the calculation of section 163(d)(4)(B)(ii)(I).  To that end, the meaning of the term "net gain" is integral to our analysis.

2.  Net Gain

Neither section 163, the regulations, the case law, nor the statute's legislative history defines the term "net gain".  If a term is used in the Internal Revenue Code (I.R.C.) without definition and the legislative history fails to provide any insight or guidance as to the appropriate definition, we use the ordinary and common usage of the term in applying that provision. Texaco Inc. & Subs. v. Commissioner, 101 T.C. 571, 575 (1993), affd. 98 F.3d 825 (5th Cir. 1996); see Commissioner v. Brown, 380 U.S. 563, 570-571 (1965); Crane v. Commissioner, 331 U.S. 1, 6-7 (1947); Rome I, Ltd. v. Commissioner, 96 T.C. 697, 704 (1991); Union Pac. Corp. v. Commissioner, 91 T.C. 32, 38-40 (1988); First Sav. & Loan Association v. Commissioner, 40 T.C. 474, 482 (1963). We look, therefore, to the ordinary and common usage of the term "net gain" in applying the statute.

Neither Black's Law Dictionary, 957 (7th ed. 1999) nor Webster's Third New International Dictionary (1993) specifically defines the term "net gain".  However, the ordinary and common usage of the term "net gain" connotes the pecuniary gain remaining after offsetting gains against losses.  Presumably, a

prerequisite to the existence of net gain is that the taxpayer's gains exceed the taxpayer's losses.

Black's Law Dictionary (7th ed. 1999) defines the term "net loss" as "The excess of all expenses and losses over all revenues and gains." By analogy, the natural, ordinary, and familiar meaning of the term "net gain" is the excess of all gains over all losses.[10]

As is relevant herein, the terms "gains" and "losses" include short-term and long-term capital gains and short-term and long-term capital losses, respectively. For purposes of determining "net short-term capital gain", the prior year's short-term capital loss that is carried forward to the current taxable year under section 1212(b)(1)(A) is treated as a short-term capital loss for such taxable year.[11] Sec. 1.1222-1(b)(1), Income Tax Regs. Likewise, for purposes of determining "net

---

[10] See, e.g., similar definitions under sec. 1222(9) that define "capital gain net income" as "the excess of the gains from the sales or exchanges of capital assets over the losses from such sales or exchanges", and under sec. 1.469-2T(e)(3)(ii)(E)(3), Temporary Income Tax Regs., 53 Fed. Reg. 5719 (Feb. 25, 1988), that define "net gain" for purposes of that section as "the amount by which the gains from the sale of all of the property * * * exceed the losses (if any) from such sale".

[11] Sec. 1212(b)(1) provides in pertinent part: "If a taxpayer other than a corporation has a net capital loss for any taxable year--(A) the excess of the net short-term capital loss over the net long-term capital gain for such year shall be a short-term capital loss in the succeeding taxable year, and (B) the excess of the net long-term capital loss over the net short-term capital gain for such year shall be a long-term capital loss in the succeeding taxable year."

long-term capital gain", the prior year's long-term capital loss that is carried forward to the current taxable year under section 1212(b)(1)(B) is treated as a long-term capital loss for such taxable year.  Sec. 1.1222-1(b)(2), Income Tax Regs. Furthermore, the pertinent parts of the regulations provide:

> the portion thereof which is a short-term capital loss carryover shall be carried over to the succeeding taxable year and <u>treated as a short-term capital loss sustained in such succeeding taxable year</u>, and the portion thereof which constitutes a long-term capital loss carryover shall be carried over to the succeeding taxable year and <u>treated as a long-term capital loss sustained in such succeeding taxable year</u>.  The carryovers are included in the succeeding taxable year in the determination of the amount of the short-term capital loss, the net short-term capital gain or loss, the long-term capital loss, and the net long-term capital gain or loss in such year, the net capital loss in such year, and the capital loss carryovers from such year. * * * [Sec. 1.1212-1(b)(1), Income Tax Regs.; emphasis added.]

It follows that because short-term capital loss carryovers and long-term capital loss carryovers are treated as losses in the current taxable year, they are also losses for purposes of determining "net gain" in section 163(d)(4)(B)(ii)(I).

Accordingly, we conclude as a matter of law that the term "net gain" for purposes of section 163(d)(4)(B)(ii)(I) means the excess, if any, of total gains over <u>total</u> losses, including capital loss carryovers, from the disposition of property held for investment.[12]

---

[12]  We note that respondent has adopted this view and has
(continued...)

B.  Legislative History

Section 163(d) was enacted to curb the practice of using the investment interest expense deduction to offset taxable income (e.g., noninvestment income) in a current taxable year; i.e., to prevent the "mismatching" of investment income and investment expenses.[13]

As relevant to this case, the Tax Reform Act of 1969 (TRA 1969), Pub. L. 91-172, sec. 221(a), 83 Stat. 574, initially limited the deduction for investment interest expense to $25,000, plus the amount of net investment income, plus the amount of long-term capital gain.  Again as relevant to this case, the TRA 1969 amendment defined investment income as (i) the gross income from interest and dividends, (ii) the net short-term capital gain attributable to the disposition of property held for investment, and (iii) any amount treated under sections 1245 and 1250 as

---

[12](...continued)
utilized this definition on Form 4952, General Instructions, for Line 4b ("Net gain from the disposition of property held for investment is the excess, if any, of total gains over total losses from the disposition of property held for investment.").

[13]  H. Rept. 91-413, at 72 (1969), 1969-3 C.B. 200, 245, states in pertinent part:

> Where the taxpayer's investment, however, produces little current income, the effect of allowing a current deduction for the interest is to produce a mismatching of the investment income and related expenses of earning that income.  In addition, the excess interest, in effect, is used by the taxpayer to offset other income, such as his salary, from taxation.

ordinary income.  See sec. 163(d)(3)(B), I.R.C. 1954, as amended by TRA 1969.

In 1976, Congress revised section 163(d) to reduce the use of this deduction to shelter noninvestment types of income.[14] See sec. 209(a) of the Tax Reform Act of 1976 (TRA 1976), Pub. L. 94-455, 90 Stat. 1542.  The definition of investment income remained unchanged, but the TRA 1976 amendment eliminated any offset of investment interest expense against long-term capital gain.  Id.

In 1986, Congress expanded the scope of the investment interest expense limitation and altered the calculation of the limitation by including "any net gain attributable to the disposition of property held for investment".  Tax Reform Act of 1986 (TRA 1986), Pub. L. 99-514, sec. 511(a), 100 Stat. 2320; see H. Conf. Rept. 99-841 (1986), 1986-3 C.B. (Vol. 4) 152, wherein the conference committee articulated the intent to expand the definition of investment income "to include the same items as under * * * [TRA 1976] plus the taxable portion of net gain from the disposition of investment property."[15]  (Emphasis added.)

---

[14]  See H. Rept. 94-658, at 102, 1976-3 C.B. (Vol. 2) 695, 794; S. Rept. 94-938, at 106, 1976-3 C.B. (Vol. 3) 49, 144; Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1976, at 103 (J. Comm. Print 1976).

[15]  See also H. Rept. 99-426, at 300 (1986) ("[investment income] also includes the nondeductible portion of net long-term capital gain on investment property."); S. Rept. 99-313, at 805

(continued...)

C. <u>Analysis</u>

Petitioners contend that respondent mischaracterized their investment income for each taxable year at issue by including capital losses and capital loss carryovers. Petitioners argue that section 163(d)(4)(B)(ii)(I) requires inclusion of only their capital gains and, furthermore, that "net gain" does not require inclusion of their capital losses and capital loss carryovers.

Petitioners' reading of the statute is at odds with the plain language of the statute. Essentially, petitioners attempt to omit the word "net" from the definition of investment income, even though the phrase is clearly found in section 163(d)(4)(B)(ii)(I). If we were to adopt petitioners' reading of the statute, we would render meaningless Congress's explicit reference in section 163(d)(4)(B)(ii) to the term "<u>net</u> gain". (Emphasis added.) Clearly, Congress did not intend this result, nor do we adopt it.

We hold as a matter of law that petitioners' capital losses and capital loss carryovers are an integral part of the equation in calculating investment income under section 163(d)(4)(B). Were these losses not included, petitioners would receive a

---

[15](...continued)
(1986) ("[investment income] also includes the gain on investment property."); Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1986, at 263, 265 (Comm. Print 1987) ("Investment income includes * * * gain (whether long-term or short-term) attributable to the disposition of property held for investment".).

double tax benefit. Under petitioners' approach, capital gains would be offset by capital losses and capital loss carryovers and not subjected to taxation. Then, those same capital gains that escaped taxation would be used to increase investment income and, simultaneously, the investment interest expense deduction. This double tax benefit is clearly not permitted by section 163(d).

We now turn to petitioner's investment interest expense deductions for the taxable years at issue. Based on the amounts reported by petitioners on their Schedules D, petitioners had a total net capital loss in each taxable year at issue. It follows, then, that petitioners had zero "net gain" in 1999, 2000, and 2001 for purposes of section 163(d)(4)(B)(ii)(I). Therefore, petitioners have net investment income and allowable investment interest expense deductions for the taxable years at issue as follows:

|                                                                        | 1999     | 2000      | 2001      |
|------------------------------------------------------------------------|----------|-----------|-----------|
| Investment interest expense                                            | $63,807  | $92,036   | $2,779    |
| Disallowed investment interest expense from prior taxable year         | ---      | 58,668    | 146,217   |
| Total investment interest expense                                      | 63,807   | 150,704   | 148,996   |
| Gross income from property held for investment                         | 5,139    | 4,487     | 453       |
| Net gain from the disposition of property held for investment          | ---      | ---       | ---       |
| Net investment income                                                  | 5,139    | 4,487     | 453       |
| Disallowed investment interest expense to be carried forward to the next taxable year | 58,668 | 146,217 | 148,543 |
| Investment interest expense deduction                                  | 5,139    | 4,487     | 453       |

D. Conclusion

We hold that "net gain", as that term is used in section
163(d)(4)(B)(ii)(I), requires inclusion of petitioners' capital
losses and capital loss carryovers for purposes of calculating
the section 163(d)(1) limitation on the investment interest
expense deduction. We hold further that petitioners' investment
interest expense deductions for 1999, 2000, and 2001 are limited
to $5,139, $4,487, and $453, respectively. In view of the
foregoing, we sustain respondent's determination on the disputed
issue.

We have considered all of the other arguments made by
petitioners and, to the extent that we have not specifically
addressed them, we find them to be without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.