148 T.C. No. 22

UNITED STATES TAX COURT

STEVEN M. PETERSEN AND PAULINE PETERSEN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

JOHN E. JOHNSTUN AND LARUE A. JOHNSTUN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 15184-14, 15185-14.         Filed June 13, 2017.

I.R.C. sec. 267(a)(2) defers deductions for expenses paid by a taxpayer to a related person until the payments are includible in the related person's gross income. I.R.C. sec. 267(b) defines the "relationships" that bring this statute into play. I.R.C. sec. 267(e) provides that, for purposes of applying subsec. (a)(2), an S corporation and "any person who owns (directly or indirectly) any of the stock of such corporation" shall be "treated as persons specified in a paragraph of subsection (b)." I.R.C. sec. 267(e) thus deems S corporations and their shareholders to be "related persons" regardless of how much or how little stock each shareholder individually owns. I.R.C. sec. 267(c), which provides rules for constructive ownership of stock, provides that stock owned by a "trust" is deemed constructively owned by the beneficiaries of the trust.

Ps were shareholders of a closely held S corporation.  S formed an ESOP for the benefit of its employees and transferred S stock and cash to the related ESOP trust.  During 2009 and 2010 S accrued payroll expenses for employees who participated in the ESOP, but a portion of these expenses remained unpaid at the end of each year.  S claimed deductions, and Ps as shareholders of S claimed flowthrough deductions, for these accrued but unpaid payroll expenses.  R disallowed these deductions on the ground that the ESOP participants were beneficiaries of a "trust"; that these employees were deemed by I.R.C. sec. 267(c) to be constructive owners of the S stock held by the trust; and hence that the ESOP participants and S were related persons for purposes of I.R.C. sec. 267(b) and (a)(2).

1.  Held:  The entity holding the S stock for the benefit of the ESOP participants is a "trust" within the meaning of I.R.C. sec. 267(c).  I.R.C. sec. 267(c)(1) thus deems the stock held by the trust to be owned by the trust's beneficiaries, viz., the S employees who participated in the ESOP.

2.  Held, further, S and the ESOP-participating employees are deemed by I.R.C. sec. 267(e) to be related persons for purposes of I.R.C. sec. 267(b).  I.R.C. sec. 267(a)(2) accordingly operates to defer S' deductions for the accrued but unpaid payroll expenses to the year in which such pay was received by the ESOP employees and includible in their gross income.

Michael C. Walch, for petitioners.

Rebekah A. Myers, for respondent.

OPINION

LAUBER, <u>Judge</u>: With respect to petitioners Steven Petersen and Pauline Petersen, the Internal Revenue Service (IRS or respondent) determined, for their 2009 and 2010 taxable years, the following Federal income tax deficiency, over-payment,[1] and accuracy-related penalty:[2]

| Year | Deficiency/ Overpayment | Penalty sec. 6662(a) |
|------|------|------|
| 2009 | $429,444 | $85,889 |
| 2010 | (44,466) | -0- |

With respect to petitioners John Johnstun and Larue Johnstun, the IRS determined, for their 2009 and 2010 taxable years, the following Federal income tax deficiency, overpayment, and accuracy-related penalty:

---

[1]For each couple, the overpayment that the IRS determined for 2010 results from applying, to the different facts of 2010, the legal theory that the IRS adopted in determining the deficiency for 2009. As explained more fully below, we believe that legal theory to be correct, and we will accordingly sustain the deficiencies that the IRS determined for 2009. We do not appear to have jurisdiction to determine an overpayment for 2010 because the IRS did not determine a deficiency for that year. <u>See</u> secs. 6214(b), 6512(b)(1); <u>Kupersmit v. Commissioner</u>, T.C. Memo. 2014-129. However, absent any statute of limitation concerns, we assume that the IRS will credit each couple with the overpayment that the notice of deficiency determined for 2010.

[2]All statutory references are to the Internal Revenue Code (Code) in effect for the relevant years, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

| Year | Deficiency/ Overpayment | Penalty sec. 6662(a) |
|------|-------------------------|----------------------|
| 2009 | $1,793 | $359 |
| 2010 | (144) | -0- |

These cases present a question of statutory interpretation involving section 267, which disallows or defers deductions for certain losses and expenses incurred in transactions between related persons. Section 267(a)(2) provides that if a taxpayer makes a deductible payment to a related person (as specified in subsection (b)), that payment is not allowable as a deduction to the payor until it is includible in the gross income of the payee. The question presented is whether this section applies to defer certain deductions accrued by Petersen, Inc. (Petersen or the company), an S corporation of which petitioners were the founders and original shareholders.

Petersen uses the accrual method of accounting for Federal income tax purposes. In 2009 and 2010 Petersen accrued expenses for wages, vacation pay, and related payroll items (collectively, accrued payroll expenses) on behalf of its employees. Some of these accrued payroll expenses were not expected to be paid, and were not in fact paid, until the year following the year in which Petersen made the accruals. If Petersen and its employees were "related persons," section 267(a)

operated to defer the corporate deduction for these accrued but unpaid expenses-- and the resulting flowthrough deductions to petitioners as Petersen's shareholders --until the year the expenses were paid and the amounts were includible in the employees' income.

Section 267(e) provides "special rules for pass-thru entities," including S corporations. In the case of any amount paid or incurred by an S corporation, the corporation and "any person who owns (directly or indirectly) any of the stock of such corporation" are deemed to be "related persons" for purposes of section 267(b). See sec. 267(e)(1)(B)(ii). Section 267(c)(1), which sets forth rules for constructive ownership of stock, provides that "[s]tock owned, directly or indi- rectly, by or for a * * * trust shall be considered as being owned proportionately by * * * its * * * beneficiaries."

During 2009 and 2010 Petersen maintained an employee stock ownership plan (ESOP) for its participating employees. During each year, some or all of the Petersen stock was owned by the related ESOP trust. Respondent contends that the ESOP trust is a "trust" within the meaning of section 267(c)(1), with the con- sequence that the trust beneficiaries--viz., the Peterson employees who were ESOP participants--are deemed to have owned their proportionate shares of the Petersen stock held by the trust.

In short, if Petersen's employees were the beneficiaries of a trust that owned Petersen stock, as respondent contends, they were deemed "related" to Petersen for purposes of section 267(b). That would make section 267(a)(2) applicable to require that the company's deductions for accrued but unpaid payroll expenses be deferred until the pay was received by the employees and thus includible in their gross income. We agree with respondent's construction of the statute and will accordingly render a decision in his favor with respect to the deficiencies. But we rule for petitioners on the penalties.

## Background

These cases were submitted fully stipulated under Rule 122. There is no dispute as to the following facts, which are drawn from the parties' stipulations of facts and the attached exhibits. Petitioners resided in Utah when they petitioned this Court. Larue Johnstun is a party solely by virtue of having filed joint Federal income tax returns with her husband.

Petersen was incorporated in Utah in 1980 and filed a subchapter S election in 1989. In August 2001 the company formed an ESOP for the benefit of its employees and transferred cash and Petersen stock to the related ESOP trust. During 2009 and the first nine months of 2010 the ESOP trust owned 20.4% of the company; Mr. and Mrs. Petersen collectively owned 79.2%, and Mr. Johnstun owned

0.4%. On October 1, 2010, the ESOP trust acquired petitioners' shares and became the company's sole shareholder.

Petersen generally paid its employees every second Friday. At year-end 2009 and 2010 Petersen had accrued but unpaid wage expenses of $1,059,767 and $825,185, respectively. These amounts were paid to its employees by January 31 of the following year. Approximately 89% of these amounts was attributable to employees who participated in the ESOP.

Petersen's employees accrued vacation time as they worked. They were required to use this accrued vacation time during the year accrued or during the next calendar year. At year-end 2009 and 2010 Petersen had accrued but unpaid vacation pay expenses of $473,744 and $503,896, respectively. These amounts were paid to its employees by December 31 of the following year. Roughly 94.5% of these amounts was attributable to employees who participated in the ESOP.[3]

Petersen filed timely Forms 1120S, U.S. Income Tax Return for an S Corporation, for 2009 and 2010. On these returns it claimed deductions for (among other things) the accrued but unpaid payroll expenses described above. Petitioners

---

[3]At year-end 2009 and 2010 Petersen had also accrued, but not yet paid to its employees, "other" expenses of $34,986 and $21,302, respectively. The record does not disclose the nature of these expenses or when they were ultimately paid.

on their individual returns claimed flowthrough deductions equal to their pro rata shares of these accrued but unpaid expenses.

The IRS selected Petersen's 2009 and 2010 Forms 1120S for examination. Invoking section 267, the IRS disallowed deductions for the accrued but unpaid expenses to the extent they were attributable to employees who participated in the ESOP. The IRS then performed a follow-on examination of petitioners' individual returns. For 2009 the IRS disallowed flowthrough deductions aggregating $1,214,835 for Mr. and Mrs. Petersen and $6,338 for Mr. Johnstun. For 2010 the IRS allowed additional flowthrough deductions aggregating $120,818 for Mr. and Mrs. Petersen and $512 for Mr. Johnstun, attributable to certain expenses that had been accrued in 2009 and paid in 2010. These allowances generated overpayments for 2010. As a result of these determinations and computational adjustments to petitioners' itemized deductions for 2009, the IRS determined the deficiencies and overpayments set forth above. See supra pp. 3-4. The IRS also determined accuracy-related penalties for 2009.

On February 10, 2015, we consolidated these cases for purposes of trial, briefing, and opinion. On June 1, 2015, we granted the parties' motion for leave to submit the cases for decision without trial under Rule 122. On April 15, 2016, we asked the parties to file a supplemental stipulation of facts and attach thereto

copies of the ESOP's trust instrument and other organizational documents. They timely complied with this request.

## Discussion

### I.    Accrued Expenses

Deductions are a matter of legislative grace, and the burden is on the taxpayer to prove entitlement to claimed deductions. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Petitioners do not contend that the burden of proof should shift to respondent under section 7491. In any event, with respect to the deficiencies only legal issues remain, so the burden of proof is irrelevant. See, e.g., Nis Family Tr. v. Commissioner, 115 T.C. 523, 538 (2000).

Generally, an accrual basis taxpayer may deduct ordinary and necessary business expenses in the year when all events have occurred that establish the fact of the liability, the amount of the liability is set, and economic performance has occurred with respect to the liability. Sec. 461; sec. 1.446-1(c)(1)(ii)(A), Income Tax Regs. When such expenses are owed to a related cash basis taxpayer, however, section 267(a)(2) provides that the payor may deduct the expenses only for the taxable year for which the amounts are includible in the payee's gross income.

See Tate & Lyle, Inc. v. Commissioner, 103 T.C. 656, 659 (1994), rev'd and remanded on other grounds, 87 F.3d 99 (3d Cir. 1996).

Petersen was an accrual basis taxpayer during 2009 and 2010, and the ESOP participants were cash basis taxpayers. The parties agree that the accrued payroll expenses were ordinary and necessary to the company's business and that the requirements of section 461 have been met. The sole issue is whether the company and the ESOP participants were related persons under section 267(b).

A.    Threshold Arguments

Petitioners advance three threshold arguments that we will address briefly. First, they contend that section 318, not section 267, provides the applicable rules for constructive ownership of stock.[4] Section 318 is one of several Code provisions that set forth rules for constructive ownership of stock. By its terms, however, it applies only "[f]or purposes of those provisions of this subchapter to which the rules contained in this section are expressly made applicable." Sec. 318(a).

Section 318 does not apply here for two reasons. First, section 318 is in subchapter C, whereas section 267 is in subchapter B, of title 26, subtitle A,

---

[4]Petitioners wish section 318 to apply because its attribution rule for trusts excludes tax-exempt employees' trusts. See sec. 318(a)(2)(B)(i) ("Stock owned, directly or indirectly, by or for a trust (other than an employees' trust described in section 401(a) which is exempt from tax under section 501(a)) shall be considered as owned by its beneficiaries[.]").

chapter 1. Thus, section 267 is not a "provision[] of this subchapter" within the meaning of section 318(a). Second, the rules of section 318 are not "expressly made applicable" by section 267. Quite the contrary: Section 267(c) provides its own rules for constructive ownership of stock, demonstrating Congress' intent that these latter rules should apply. Cf. In re S. Beach Sec., Inc., 606 F.3d 366, 375 (7th Cir. 2010) (Posner, J.) (ruling that the attribution rules of section 318 "don't apply to section 269; for section 318 applies only when expressly made applicable * * *, and it hasn't been made expressly applicable to section 269, which anyway is not in subchapter C").

Petitioners cite Boise Cascade Corp. v. United States, 329 F.3d 751 (9th Cir. 2003), to support a contrary conclusion. The question there was whether payments by a corporation to redeem stock held by an ESOP trust were deductible as "dividends paid" under section 404(k). The answer depended on whether the redemption was "not essentially equivalent to a dividend," in which case it would be treated under section 302(b)(1) as an "exchange" rather than a dividend. Applying the constructive ownership rules of section 318, the Court of Appeals for the Ninth Circuit concluded that the ESOP trust should be treated as the owner of the redeemed stock for purposes of section 302(b)(1); that the redemptions caused no

meaningful reduction of its ownership interest; and hence that the redemptions constituted "dividends" as the taxpayer contended.

Petitioners err in relying on <u>Boise Cascade</u>.  The operative Code provision there was section 302.  Section 302 is part of subchapter C, and the rules of section 318 are expressly made applicable to section 302.  <u>See</u> sec. 302(c) ("[S]ection 318(a) shall apply in determining the ownership of stock for purposes of this section.").  The operative Code provision here is section 267.  As noted previously, section 267 is not part of subchapter C, and the rules of section 318 are not (expressly or otherwise) made applicable to it.

Petitioners next contend that, because Petersen's gross receipts exceed $5 million annually, section 448 requires that the company be an accrual basis taxpayer.  This contention is incorrect:  Section 448 applies only to C corporations, tax shelters, and partnerships with a C corporation as a partner.  <u>See</u> sec. 448(a).  In any event, section 267(a) does not deny Petersen use of the accrual method generally; it simply defers deductions for a limited universe of expenses payable to related cash basis parties.

Third, petitioners urge that respondent's position violates generally accepted accounting principles (GAAP) by denying a current deduction for properly accrued payroll costs.  As has often been noted, however, tax accounting differs in

many respects from GAAP financial accounting.  See, e.g., United States v. Hughes Props., Inc., 476 U.S. 593, 603 (1986); Thor Power Tool Co. v. Commissioner, 439 U.S. 522 (1979) (disallowing writedown of excess inventory for tax purposes even though it conformed to GAAP); Hamilton Indus., Inc. v. Commissioner, 97 T.C. 120, 128 (1991).  Especially is that so where (as here) a Code provision explicitly requires a treatment that differs from GAAP.  Petersen has no greater claim than any other accrual basis taxpayer to exemption from the operation of section 267.

B.     Statutory Background

Section 267 is designed "to prevent the use of the differing methods of reporting income for Federal income tax purposes in order to obtain artificial deductions for interest and business expenses."  Metzger Tr. v. Commissioner, 76 T.C. 42, 75 (1981), aff'd, 693 F.2d 459 (5th Cir. 1982).  Originally enacted in 1934, the statute has been amended many times, most substantially in 1984.  Deficit Reduction Act of 1984, Pub. L. No. 98-369, sec. 174(c), 98 Stat. at 704-708.  Section 267 is remedial, requiring related persons to "use the same accounting method with respect to transactions between themselves in order to prevent the allowance of a deduction without the corresponding inclusion in income."  H.R. Rept. No. 98-432 (Part 2), at 1578 (1984), 1984 U.S.C.C.A.N. 697, 1205.

Section 267(b) generally defines the "relationships" that bring the statute into play. Before 1978 transactions between S corporations and their shareholders were exempt from its coverage unless the shareholder owned (constructively or otherwise) more than 50% of the corporation's stock. See sec. 267(b)(2). Congress revised that treatment in 1978 by enacting section 267(e). Act of November 10, 1978, Pub. L. No. 95-628, sec. 2(a), 92 Stat. at 3627. Section 267(e) provides that, for purposes of applying subsection (a)(2), an S corporation and "any person who owns (directly or indirectly) any of the stock of such corporation" shall be "treated as persons specified in a paragraph of subsection (b)." Section 267(e) thus deems S corporations and their shareholders to be "related persons" regardless of how much or how little stock each shareholder individually owns.[5]

Section 267(c) provides constructive ownership rules "[f]or purposes of determining, in applying subsection (b), the ownership of stock." As noted previously, subsection (e)(1) provides that an S corporation and its shareholders "shall be treated as persons specified in a paragraph of subsection (b)." See sec. 1.267(a)-2T(b), Q&A-4 and -5, Temporary Income Tax Regs., 49 Fed. Reg. 46995 (Nov. 30, 1984) (referring to section 267(b) as "modified by section 267(e)"). Thus, the

---

[5]Before it was amended by the Deficit Reduction Act of 1984, Pub. L. No. 98-369, sec. 174(c), 98 Stat. at 704-708, section 267(f) allowed an S corporation to deduct accrued amounts before payout if the payee shareholder held less than a 2% interest in the corporation.

constructive ownership rules of subsection (c) apply in determining the ownership of Petersen's stock.

As relevant here, section 267(c)(1) provides that "[s]tock owned, directly or indirectly, by or for a corporation, partnership, estate, or trust shall be considered as being owned proportionately by or for its shareholders, partners, or beneficiaries." Thus, if the ESOP participants by virtue of subsection (c) constructively own Petersen stock as beneficiaries of a trust, subsection (e) deems the company and those employees--no matter how small their percentage ownership--to be "related persons" for purposes of subsections (a) and (b). We turn now to that legal question: whether the Petersen stock in question was owned, within the meaning of section 267(c)(1), by a "trust" of which the ESOP participants were "beneficiaries."[6]

C.    Analysis

"Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning." Robinson v. Shell Oil Co., 519

---

[6]Under the corporation/shareholder relationship defined in section 267(b)(2), the only ESOP participants deemed "related" to the company would be Mr. and Mrs. Petersen, who collectively owned 79.2% of the Petersen stock until October 1, 2010. However, section 267(e)(1)(B)(ii) supplements section 267(b), in the case of S corporations, by providing that "any person" who owns constructively or directly "any of the stock" of an S corporation "shall be treated as [a] person[] specified in a paragraph of subsection (b)."

U.S. 337, 340 (1997). In determining "the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291 (1988). We ordinarily give the words Congress used their ordinary meaning, unless doing so would produce absurd or futile results. United States v. Am. Trucking Ass'ns, Inc., 310 U.S. 534, 543-544 (1940); see Tamarisk Country Club v. Commissioner, 84 T.C. 756, 761 (1985). If a statute is clear on its face, we require unequivocal evidence of legislative intent before construing the statute in a manner that overrides the plain meaning of the words used therein. Halpern v. Commissioner, 96 T.C. 895, 899 (1991).

The term "trust" is not defined in section 267(c)(1) or elsewhere in section 267. Subsection (c)(1) was included in the original version of the statute as enacted in 1954. Internal Revenue Code of 1954, ch. 736, sec. 267(c)(1), 68A Stat. at 79. Since then section 267 has been amended 11 times, but none of these amendments changed the wording of subsection (c)(1) or provided a definition of "trust." The legislative history is likewise silent concerning the universe of entities that Congress intended this term to encompass.

The word "trust" appears in section 267(c)(1) as part of series that also includes "corporation," "partnership," and "estate." Each of these words appears to

be used in a broad and generic sense without limitation or qualification. In this respect section 267 differs in a critical way from section 318, which prescribes constructive ownership rules for certain provisions of subchapter C. Section 318(a)(2)(B)(i) mandates attribution to beneficiaries of stock owned "by or for a trust (other than an employees' trust described in section 401(a) which is exempt from tax under section 501(a))." This provision shows that Congress knew how to limit the scope of the term "trust" when it intended to do so. It expressed no such intent in section 267 or in the legislative history accompanying the statute's enactment and amendment.

In determining whether the Petersen stock was owned by a "trust" as that term is ordinarily understood, we begin by examining the documents that created the ESOP. When Petersen adopted the ESOP in 2001, two documents were drafted: a plan agreement and a trust instrument. The plan agreement states that the ESOP is "intended to be an employee stock ownership plan within the meaning of section 4975(e)(7)." Section 1.3 provides that amounts contributed to the ESOP are held by a "trustee" who acts in accordance with the terms of a trust instrument. That section further provides that "[t]he Trust implements and forms a part of the Plan" and that "[t]he provisions of and benefits under the Plan are subject to the terms and provisions of the Trust."

The plan agreement specifies the ESOP participants' rights and the trustee's duties with regard to holding, investing, and distributing the plan's assets subject to the direction of the plan administrator. Section 14 requires the plan administrator as a fiduciary to discharge his or her duties "with respect to the Plan and the Trust solely in the interests of Participants." Section 7.1 provides that an individual account shall be created in the name of each participant, and section 1.3 provides that the amounts in these accounts are held and invested by the trustee.

The trust instrument is titled "Petersen, Inc. Employee Stock Ownership Trust." Article 2 specifies how the trust assets--chiefly Petersen stock--are to be managed and controlled. It states that the trustee is required to: (1) manage and account for all contributions that Petersen makes under the Plan "as one Trust Fund"; (2) receive and hold "all contributions paid to it under the Plan"; (3) retain sufficient cash "as may be required for the proper administration of the Trust"; (4) "make distributions from the Trust Fund"; (5) "vote any stocks * * * held in the Trust"; (6) "furnish to the Company and the Administrator an annual written account"; and (7) "invest and reinvest the assets of the Trust Fund, upon direction from the Administrator." The trust agreement requires the trustee to discharge these duties "solely in the interest of the Plan's participants" with the "care, skill,

prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity * * * would use."

Article 4.3 of the trust instrument provides that interests under the Plan are not subject to the claims of Petersen's creditors "and may not be voluntarily or involuntarily assigned." Article 5, captioned "No Reversion to Company," provides that "no part of the corpus or income of the Trust Fund" shall revert to Petersen, provided that Petersen's initial contribution may be returned to it if the ESOP should initially fail to qualify under section 401(a).[7]

These provisions show that the entity holding the Petersen stock for the benefit of the ESOP participants was a "trust" in the ordinary sense of that word. The regulations describe a trust as an arrangement "whereby trustees take title to property for the purpose of protecting or conserving it for the beneficiaries." Sec. 301.7701-4(a), Proced. & Admin. Regs. "Generally speaking, an arrangement will be treated as a trust * * * if it can be shown that the purpose of the arrangement is

---

[7]Consistently with the plan agreement and the trust instrument, the "Summary Plan Description" furnished to the ESOP participants states that "under the ESOP, stock representing your beneficial ownership in the Company will be held on your behalf" in "a special trust called an employee stock ownership trust. The trust is part of the ESOP." This document lends further support to the conclusion that Petersen intended to establish and actually did establish a trust to hold its stock for the benefit of its employees.

to vest in trustees responsibility for the protection and conservation of property for beneficiaries." Ibid.[8]

The arrangement involved here closely resembles an ordinary trust whereby a settlor (here, the company) establishes a trust for the benefit of specified beneficiaries (the ESOP participants), contributes property to the trust (Petersen stock and cash), and designates a trustee to hold the property for the beneficiaries and act in their best interest. The ESOP trust easily qualifies as a "trust" under the regulatory definition and the common law definitions appearing in the case law.[9]

---

[8]In contrast, a "business trust"--viz., an entity created to allow a beneficiary to carry on an income-producing activity that would otherwise have been conducted through a corporation or partnership--is not treated as a "trust" for Federal income tax purposes because there are no arrangements to protect or conserve property for beneficiaries. Sec. 301.7701-4(b), Proced. & Admin. Regs.

[9]See, e.g., Cent. States, Se. and Sw. Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559 (1985) (holding that a trust is generally denoted by the vesting of duties in a trustee, including a duty to preserve and maintain trust assets); Owner Operator Indep. Drivers Ass'n, Inc. v. Comerica Bank (In re Arctic Express Inc.), 636 F.3d 781, 792 (6th Cir. 2011) (citing Restatement (Third) of Trusts for common law definition of a "trust"); United States v. De Bonchamps, 278 F.2d 127, 133 (9th Cir. 1960) (holding that a relationship is generally classified as a trust if it is "clothed with the characteristics of a trust"); Hart v. Commissioner, 54 F.2d 848, 850-851 (1st Cir. 1932), rev'g in part 21 B.T.A. 1001 (1930); Johnson v. Commissioner, 108 T.C. 448, 475 (1997), aff'd in part, rev'd in part on other grounds, 184 F.3d 786 (8th Cir. 1999); George Gleason Bogert, et al., Bogert's Trusts and Trustees, sec. 582 (2016).

Indeed, if the plan assets were not held by a "trust," the ESOP could not qualify under ERISA. See 29 U.S.C. sec. 1103(a) (2012) ("[A]ll assets of an employee benefit plan shall be held in trust by one or more trustees."). Section 401(a), in conjunction with section 501(a), supplies the tax exemption for all qualified plans, including ESOPs. It provides that a "trust created or organized in the United States and forming part of a stock bonus * * * plan of an employer * * * shall constitute a qualified trust" if (among other things) contributions are made to the trust for the benefit of plan participants. Section 4975(e)(1)(A) defines a "plan" to include "a trust described in section 401(a) which forms a part of a plan." Section 4975(e)(7) defines an ESOP as a "defined contribution plan * * * which is a stock bonus plan" that is "qualified * * * under section 401(a)" and meets the requirements of section 409. And section 404(a)(3)(A)(i) allows the employer a deduction (subject to specified dollar limits) "if the contributions are paid into a stock bonus or profit-sharing trust." In short, the statutory scheme upon which the ESOP arrangement rests presumes that the stock held for the benefit of the ESOP participants will be owned by a "trust."

Petitioners advance in support of a contrary conclusion a variety of arguments, which may be divided into two groups. The thrust of the first group is that the ESOP documents do not show that Petersen intended to create a trust:

• Petitioners contend that Petersen's right to terminate the plan gives it a reversionary interest that is inconsistent with the premise of a trust, namely, that the trust assets are held for its beneficiaries. Petitioners are correct that Petersen in specified circumstances can terminate the plan. But their argument ignores section 8.2 of the trust instrument, which requires, in the event of plan termination, that the trust fund be liquidated and distributed to the ESOP participants (subject to a reserve for paying the trustee's expenses). Indeed, if Petersen held a reversionary interest in the trust assets, the ESOP could not qualify for tax exemption. See sec. 1.401-2(a)(1), Income Tax Regs. ("[A] trust is not qualified unless under the trust instrument it is impossible * * * for any part of the trust corpus or income to be used for, or diverted to, purposes other than for the exclusive benefit of such employees and their beneficiaries.").

• Petitioners contend that the plan agreement takes precedence over the trust instrument because the trustee will typically act on instructions from the plan administrator. While the latter statement may be true, we do not see how it affects the proper characterization of the entity owning the assets. The trust instrument explicitly requires the trustee to hold and protect the assets for the beneficiaries and to discharge his fiduciary duties for their exclusive benefit. The fact that the trustee accepts instructions from the plan administrator regarding investment

decisions and other matters does not alter his status as a trustee or cause the trust to be something other than a trust.

• The plan agreement states that, "[t]o the extent not superseded by the laws of the United States, the laws of Utah shall be controlling in all matters relating to the Plan." Petitioners contend that Utah law excludes from the definition of "trust" a plan established for the primary purpose of providing employee benefits and that Utah law should control this question. But it is well settled that the interpretation of terms employed in the Internal Revenue Code is governed by Federal, not State, law. See, e.g., Commissioner v. Tower, 327 U.S. 280, 288 (1946); Kenfield v. United States, 783 F.2d 966, 969 (10th Cir. 1986); Killoran v. Commissioner, 709 F.2d 31, 31-32 (9th Cir. 1983), aff'g T.C. Memo. 1981-659, 42 T.C.M. (CCH) 1662. The central question presented by these cases--the meaning and scope of the term "trust" as used in section 267(c)(1)--is a question of Federal law because it involves the proper interpretation of a Federal statute. On this point Utah law is "superseded by the laws of the United States."

The thrust of petitioners' second group of arguments is that an ESOP, as a matter of law, cannot be a "trust" within the meaning of section 267(c)(1). These arguments share a common flaw: They fail to appreciate the distinction between

the plan agreement, which created the ESOP, and the trust instrument, which created the trust that holds the plan assets. We will address these arguments briefly:

• Petitioners contend that an ESOP is not a trust and that the Petersen ESOP has "participants" rather than "beneficiaries" of the sort covered by section 267(c)(1). This argument fails because the trust that holds the assets is distinct from the plan that created the ESOP. See sec. 401(a) (referring to "[a] trust * * * forming part of a stock bonus * * * plan"); sec. 401(a)(28)(A) (referring to "a trust which is part of an employee stock ownership plan"); sec. 4975(e)(7) (defining an ESOP as a "stock bonus plan which is qualified * * * under section 401(a)"). This is not an "either/or" dilemma: Petersen's employees are simultaneously participants in the plan and beneficiaries of the trust.

• Petitioners contend that ESOPs are subject only to the provisions of subchapter D (governing retirement and other qualified plans) and hence are immune from the operation of subchapter B (governing computation of taxable income), which includes section 267. This is clearly incorrect because the provisions of subchapter B apply to countless entities and relationships in the Code, regardless of which subchapter addresses their taxation in particular. The constructive ownership rules of section 267(c), for example, explicitly apply to partnerships (whose taxation is governed by subchapter K) and estates (whose taxation is governed by

subchapter J). In any event, respondent seeks to apply section 267, not to compute the ESOP's taxable income, but to compute Petersen's allowable deductions that flow through to petitioners. Petitioners and Petersen are clearly subject to subchapter B.

• Petitioners note that ESOPs did not exist under common law and contend that the term "trust" as used in section 267(c)(1) should be limited to common law trusts subject to subchapter J (governing the taxation of estates, trusts, and their beneficiaries). The fact that ESOPs are creatures of statute rather than common law is irrelevant. The question at hand is whether an inter vivos trust created in connection with an ESOP is a "trust" within the meaning of the statute.

The regulations define a "trust" as "an arrangement created either by * * * will or by * * * inter vivos declaration whereby trustees take title to property for the purpose of protecting or conserving it for the beneficiaries." Sec. 301.7701-4(a), Proced. & Admin. Regs. The ESOP trust meets that definition, and petitioners have offered no persuasive reason for giving the term "trust" as it appears in section 267(c)(1) a more restrictive meaning. Had Congress wished to limit the statute's application to trusts and beneficiaries whose taxation is governed by subchapter J, it could easily have drafted section 267(c)(1) to say so. Cf. sec. 318(a)(2)(B)(i) (prescribing attribution to beneficiaries of stock owned "by or for a

trust (other than an employees' trust described in section 401(a) which is exempt from tax under section 501(a))").

• Finally, petitioners appear to contend that the ESOP trust, because it is integrated with and supposedly "subservient" to the plan, has no separate existence for Federal tax purposes and is thus immune from the coverage of section 267. This argument misapprehends the statutory structure on which the ESOP's tax exemption rests. Although the ESOP trust was formed as part of the plan, it is (and must be) a legally distinct entity created by a distinct trust instrument. See, e.g., sec. 401(a)(28)(A) (referring to "a trust which is part of an employee stock ownership plan"); sec. 404(a)(3)(A)(i) (allowing the employer a deduction "if the contributions are paid into a stock bonus or profit-sharing trust"); 29 U.S.C. sec. 1103(a) ("[A]ll assets of an employee benefit plan shall be held in trust by one or more trustees.").

At the end of the day, petitioners' core complaint is that Congress did not exclude tax-exempt employee trusts from the constructive ownership rules of section 267(c), as it explicitly did from the constructive ownership rules of section 318(a). Conceivably this was a drafting oversight: When Congress in 1978 enacted section 267(e) to address the treatment of S corporations and their shareholders, ESOPs were not eligible to be S corporation shareholders. See Small

Business Job Protection Act of 1996, Pub. L. No. 104-188, sec. 1316, 110 Stat. at 1785-1786 (enacting section 1361(c)(7) with an effective date of January 1, 1998). See generally Austin v. Commissioner, T.C. Memo. 2017-69. In any event, we are bound by the law that Congress enacted; we are not at liberty to revise section 267(c) to craft an exemption that Congress did not see fit to create. See Metzger Trust, 76 T.C. at 59 ("Courts do not have the power to repeal or amend the enactments of the legislature.").

In sum, we conclude that the "Petersen, Inc. Employee Stock Ownership Trust" is a "trust" within the meaning of section 267(c)(1). Congress did not limit the universe of trusts to which that provision applies; it could easily have drafted section 267(c)(1), as it drafted section 318(a)(2)(B)(i), to exclude tax-exempt employee trusts, but it did not do so. The trust formed in connection with the Petersen ESOP was created by a trust instrument; it has all the features of a trust in the ordinary sense of the word; and it was required to be a trust under the statutory structure on which the ESOP's tax exemption rests.

Section 267(c)(1) thus deems the Petersen stock held by the trust to be owned by the trust's beneficiaries, viz., the Petersen employees who participated in the ESOP. As a result the ESOP participants and the company are deemed "related persons" for purposes of section 267(b). See sec. 267(e)(1)(B)(ii). Sec-

tion 267(a) accordingly operates to defer Petersen's deductions for the accrued but unpaid payroll expenses to the year in which such pay was received by the ESOP participants and includible in their gross income.

## II. Penalties

The Code imposes a 20% penalty on the portion of any underpayment of tax attributable to "[n]egligence or disregard of rules and regulations" or "[a]ny substantial understatement of income tax." Sec. 6662(a) and (b)(1) and (2). Negligence includes "any failure to make a reasonable attempt to comply" with the internal revenue laws. Sec. 6662(c). An understatement of income tax is "substantial" if it exceeds the greater of $5,000 or 10% of the tax required to be shown on the return. Sec. 6662(d)(1)(A). Under section 7491(c) respondent bears the burden of production with respect to the liability of an individual for any penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

No penalty is imposed with respect to any portion of an understatement if the taxpayer acted with reasonable cause and in good faith with respect thereto. The taxpayer bears the burden of proving reasonable cause and good faith. Id. at 446-447. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the facts and circumstances, the most important of which is the extent of the taxpayer's

effort to assess his proper tax liability for the year. Sec. 1.6664-4(b)(1), Income Tax Regs. Circumstances that indicate reasonable cause and good faith include an honest misunderstanding of law that is reasonable in light of all the surrounding facts. Id.

We conclude that petitioners made a good-faith effort to assess their tax liabilities properly and hence are not liable for any accuracy-related penalty. The application of section 267(a) to employers and ESOP participants is a question of first impression in this Court; we have discovered no prior case addressing this question, and respondent has pointed us to none. We have previously declined to impose a penalty "where it appeared that the issue was one not previously considered by the Court and the statutory language was not entirely clear." See Hitchins v. Commissioner, 103 T.C. 711, 719-720 (1994). Because petitioners acted reasonably and in good faith with respect to the understatements for the years at issue, we find that they are not liable for penalties under section 6662(a).

To reflect the foregoing,

<u>Decisions will be entered for respondent with respect to the deficiencies and for petitioners with respect to the penalties</u>.